## ARGUED AND DETERMINED

### IN THE

# *Supreme Court of Errors*

### OF THE

# STATE OF CONNECTICUT.

---

### SPENCER *against* WATKINSON and others.

The town of *M.* having transferred its right in a ferry across *Connecticut* river to a turnpike company, it was, by statute, made the duty of that company to maintain it ; and the commissioners on the road were constituted commissioners on the ferry. The statute also required the turnpike company to become bound, in the sum of 2,000 dollars, with surety, to the acceptance of the treasurer of the State, to keep and maintain such ferry, as is in the act relating to ferries provided. Such bond was accordingly given, payable to *I. S.*, treasurer of the State, and his successor in office. In an action on this bond, in the name of the obligee against the obligors, assigning as a breach, the loss of two horses and a load of goods, the property of certain individuals, in attempting to cross the river, by means of the ferry, which loss was occasioned, by the want of proper fastenings of the boat to the landing-place, it was held, 1. that the breach assigned was sufficient to enable the plaintiff to recover nominal damages ; but 2. that the damages sustained by such individuals, through such neglect, could not be recovered ; the object of the bond being not to provide a fund, to which indivdual sufferers might resort for remuneration, but to enforce the directions of the commissioners and indemnify them in the discharge of their duties. [*Williams*, Ch J. and *Huntington*, J. dissenting on the latter point.]

THIS was an action of debt on a bond, in the penal sum of 2,000 dollars, dated *March 5th*, 1822, payable to the plaintiff as treasurer of the state of *Connecticut*, and his successor in of-

*Middlesex,*
July, 1835.

Spencer
*v.*
Watkinson.

fice.   To this bond there was the following condition : "That whereas the legislature of this state did, at their session in in *May*, 1821, enact a certain statute, entitled " An Act regulating Ferries," wherein, among other things, it was enacted, that the ferry across the *Connecticut* river between the towns of *Middletown* and *Chatham* shall be kept and maintained, exclusively, by the *Colchester and Chatham Turnpike Company*, in the manner prescribed in said act.   Now, if the said *Colchester and Chatham Turnpike Company* shall keep and maintain said ferry, as in said act provided, then this bond is to be void."   The defendants pleaded performance generally. The plaintiff, in his replication, denied such performance, and assigned breaches, alleging, that on the 20th of *January*, 1830, and for one month before and after that time, the scow used by the company at said ferry, for the transportation of passengers, their teams, cattle, horses and other creatures across said river, was not well furnished with suitable oars and other implements necessary for the service, in this, *viz.* that it was not furnished with any anchor, nor with any cable, rope, chain, or other thing whatsoever, whereby it could be fastened to the shore of said river, or to the wharf or landing-place on either side of said river, appertaining to said ferry ; that sufficient land for landing-places was not provided by said company ; that the wharf or place of embarking and landing at said ferry, on the *easterly* side of said river, provided by said company, was a pier or wall built of unwrought stones, rudely thrown together, extending from said *easterly* side of said river *westerly* to the channel thereof, where the water in said river was of the depth of twenty feet ; and said pier or wall was so narrow as barely to admit the passing of a single cart, wagon, or other carriage, and had no railing on either side thereof, to prevent passengers, their teams, cattle, horses and other creatures from falling into said river from said pier or wall; that the *westerly* extremity of said pier or wall, whereto said scow was brought, for the purpose of embarking and landing passengers, their teams, &c. at said ferry, and the descent therefrom to said scow, so brought thereto, was steep, slippery and dangerous ; that no cable and anchor, cable, rope, chain or other fastening was provided or used, by said company, to make said scow fast to said extremity of said pier or wall, or to the shore, so that passengers, their teams, &c. might be embarked and landed, without danger or

unnecessary delay; that while said ferry was in this condition, and not kept and maintained by said company, as provided in said act, *viz.* on the 20th of *January*, 1830, *Henry Strong* of *Chatham* came to the *easterly* side of said river, for the purpose of crossing said ferry to *Middletown*, with a wagon loaded with iron castings for coffee mills, drawn by three horses harnessed thereto, said horses, wagon and loading being the property of said *Henry Strong* and of *David Buell, Nathaniel C. Smith, Joseph Goffe* and *Bliss Welch*, all of said *Chatham*; that said scow, kept by said company at said ferry, was brought up, by the ferrymen, who managed the same for said company, to the *westerly* extremity of said pier or wall, for the purpose of receiving therein said *Henry Strong* and his said wagon, horses, and loading, and transporting them across said ferry; that said *Henry Strong* was then and there required, by said ferrymen, to pass, and did pass, with his said wagon, horses and loading, along said wall or pier, to said *westerly* extremity thereof, in order to embark therefrom on board of such scow, which was then brought to said pier or wall as aforesaid, and in no way or manner fastened thereto, or secured from floating therefrom; that said *Henry Strong* attempted to embark on board of said scow, with his said horses, wagon and loading, and drove his said horses drawing said wagon and loading partly into said scow; and thereupon said scow, not being fastened, or in any manner secured, as aforesaid, floated away from said pier or wall, with said horses partly therein, and the wagon thereout; and thereby said wagon and loading, and two of said horses, were plunged into the said river, where the water was twenty feet deep; and said two horses, being each of the value of seventy dollars, were drowned in said river, and said loading, being of the value of one hundred and seventy dollars, was sunk to the bottom of said river; and that by means of the premises, said *Henry Strong* and said other owners of said property totally lost said two horses and said loading, and were prevented from making the profit which they might, and otherwise would have made, by the sale of said loading, and were otherwise injured in their business; and thus sustained damages to the amount of 500 dollars.

The rejoinder was a general denial of the facts stated in the replication.

The cause was tried at *Haddam, August* term, 1834, before *Church*, J.

*Middlesex,*
*July 1835.*

Spencer,
*v.*
Watkinson.

On the trial, the plaintiff introduced evidence to prove, and claimed that he had proved, the several breaches assigned in his replication; which the defendants denied. They also claimed, that if the plaintiff had proved the breach assigned relative to the loss of the horses and other property, no recovery could be had, in this suit, in respect to that loss, or any damage sustained thereby; and requested the court so to instruct the jury. The plaintiff claimed the reverse of this. On this point, the court omitted to give any instruction to the jury; and the plaintiff obtained a verdict, with 400 dollars damages. The defendants thereupon moved in arrest of judgment, for the insufficiency of the declaration and replication. This motion was overruled and judgment rendered for the plaintiff. The defendants thereupon moved for a new trial for a misdirection.

*Hungerford* and *Storrs*, in support of the motion, contended, That no damages could be recovered, in this suit, for the loss stated in the replication. By the common law, there is no liability resting upon towns in this state, in regard to ferries: and their only liability, as towns, is imposed and the extent defined, by statute. Prior to the revision of 1821, there was no statute requiring towns, as such, to bear the expenses of keeping the ferries within their limits, except in cases where they were the *owners.* In respect to other ferries, their duties were merely those of supervision. *Stat.* 314. *ed.* 1808. *sec.* 1, 2. enacted in 1702. The duty imposed by the 1st section of the statute of 1821, (*p.* 219.) is not imposed upon them in respect to their ownership, or being licensed to receive the emoluments; for the duty, which is there enjoined, is enjoined to the same extent in reference to ferries of others, as those belonging to themselves.

The extent of the liability is created, by the 7th and 8th sections of the statute of 1821; (*p.* 221.) and the mode of enforcing this duty is therein defined, in regard to ferries generally; and the liability cannot be further extended than it is by the statute. From these sections, as well as from some others, it is apparent, that the object of the legislature in imposing this duty and liability upon towns, was, to guard against delays and accidents, which might otherwise happen in future, at ferries, rather than to afford redress to individuals for injuries already sustained; it being very clear, that if any accident should happen to a passenger, or his property, in crossing a ferry, through

*Middlesex*,
July 1835.

Spencer,
*v.*
Watkinson.

the negligence of the owner, or his servants, the town, unless owner, could not be subjected to the payment of the damages; for the statute creates no such liability, neither does the common law. The whole duty imposed by this statute upon the towns, is to be enforced through the medium of the commissioners and the county court; but neither the commissioners nor the county court, can, under this statute, give damages for an individual injury. The remedy given is co-extensive with the duty imposed by the statute; and the remedy does not extend to a private loss.

The 10th section of the statute of 1821, (*p.* 222.) transfers the *Middletown* ferry to the *Colchester and Chatham Turnpike Company*, and provides that it shall be kept and maintained *exclusively* by them. If it were merely transferred, *Middletown* or *Middletown* and *Chatham*, would have been liable to keep it in order, as prescribed in the 7th and 8th sections; and it would then have stood upon the same footing as most of the ferries across *Connecticut* river, the owners being liable for private injuries. But the company being required to keep it *exclusively, Middletown* is exonerated from its liability, as a town, under the statute, and at the common law, as owner.— The company, however, by becoming owners, *eo instanti* became subject to the common law liabilities; but for the particular liabilities specifically pointed out and defined by the statute, the bond is required.

That this is the just construction, is apparent from the following considerations. In the first place, the bond is given to the state, or its representative, a public officer; and there is nothing appearing upon the face of the bond, or its condition, from which it can be inferred, that it is designed for the benefit of any one but the state. And allowing the statute to be part of the condition, the design of it is to provide, in a manner not provided by the common law, for the prevention of delays and accidents at ferries, rather than to redress individual sufferers, after such delays and accidents have happened; this being left for the common law to do.

Secondly, the duty of enforcing this preventive remedy, is, most appropriately, the duty of the public, and can only be enforced through their agents; individuals having no authority to that effect. For the purpose of enabling them to enforce it, with more facility and despatch, than they could do it by in-

dictment, or other common law process, the bond is required; which, taken in connexion with the other parts of the system provided by the statute, effects the object of the legislature, with great convenience and expedition.

That one object of the bond, was, to provide a fund to reimburse the expenses of putting the ferry in proper condition, is fairly, and seems to be necessarily, inferable from the provisions of the statute. If, then, the bond was given to the state, or its representative, to subserve the interest of the state, it cannot be extended also to the benefit of individuals, unless it should clearly appear from the bond or its condition. In this case, it is believed to be much more reconcileable with both the language and spirit of the condition, (including the statute as part of the condition) to consider it as designed for the benefit of the public merely, than to extend it to the benefit of individuals. Allowing it to be equally so, it must be presumed to have been designed for the benefit of the party to whom it was given, rather than of a third person.

Thirdly, the 10th section of the statute (*p. 222.*) transfers the ferry, requires the bond, prescribes the manner of keeping it, and provides commissioners, all in the same connexion. Hence, as well as from other provisions of the statute, it is inferred, that it is made the duty of the commissioners to see that the ferry should be kept as therein prescribed; that the bond was required in aid of this object; that the bond is the fund out of which it was intended that they should be reimbursed; that the design of the bond was, to facilitate the objects, which the commissioners are authorzed to carry into effect, and none other. If these inferences are just, it is certain, that the bond does not extend to the case of an individual loss; for over such a loss the commissioners have no jurisdiction.

Fourthly, the amount of the bond, being 2000 dollars only, would be probably adequate to all the expenses necessary to be incurred in keeping the ferry in order, but would be inadequate to losses which might be very likely to occur at the ferry; and if the legislature intended it as security for private losses, they would have exacted a bond sufficient in amount to cover any and all probable losses that might happen.

Fifthly, the construction claimed by the plaintiff, would lead to results, which, it is believed, could not have been anticipated, by the legislature. In a suit on a bond like this, any number

*Middlesex,*
July, 1835.

*Spencer*
*v.*
*Watkinson.*

of breaches may be assigned, both in favour of the state and of individuals, and these individuals distinct from each other. Suppose the amount of the bond not sufficient to cover all the claims ; how should it be apportionsd among them ? Shall the state take precedence, or all come in *pari passu ?* Suppose in a suit upon the bond, an individual, or any number of individuals, should recover the full amount of the penalty ; the state could not afterwards avail itself of this fund. The very object of the bond would be thereby defeated.

Sixthly, there is no adjudged case, in any respect analogous to the present case, to be found, to sustain the plaintiff's construction. The authorities look the other way. *The Commonwealth* v. *Crowell Hatch,* 5 *Mass. Rep.* 191. *Crocker* v. *Fales* & al. 13 *Mass. Rep.* 290. The resemblance between the present bond and the bonds of sheriffs, administrators and others, confessedly given in trust for the benefit of individuals, is very faint. As to sheriffs, they were not required, by the common law, to give any bond, except for the payment of certain profits of their office to the king. *Bac. Abr. tit.* Sheriff. C. *Dalt. Sher.* 7. But by statute, in *Connecticut,* it is expressly provided, that the bond should be so conditioned as to extend to the claims of individuals against him for defaults of duty. *Stat.* 414. And as to the bonds of administrators and guardians, bonds given on the sale of minor's lands, and many others, it is a necessary inference from the nature of them and the forms of the conditions, that the judge of probate holds them *in trust.* They so purport on the face of them, and are susceptible of no other construction. There can be no doubt or difficulty in disposing of the proceeds of such bonds.

*R. S. Baldwin* and *Barnes,* contra, contended, that the bond was required as a security for such individuals as might sustain loss, by a breach of its condition—*i. e.,* by a non-compliance with the requirements of the statute relating to ferries. The statute requires, that the bond shall be taken to the acceptance of the treasurer ; and a bond required to be given to the acceptance of any person, is a bond to *him,* if no other person is named as the obligee. If he has no exclusive interest in the subject of the bond, he is constituted a trustee for those who have an interest. The benefit of *Middletown* was not the object of the legislature in requiring a bond ; because the rights

*Middlesex,*
July, 1835.

Spencer
*v.*
Watkinson.

and duties of *Middletown* in relation to this ferry having been transferred to the *Colchester & Chatham Turnpike Company, Middletown* can, in no event, be made liable for a loss. No bond is necessary for the security of the state. A bond for the maintenance of a ferry, secured by a penalty, is of no importance to the state, since it can sustain no pecuniary damage; and if the ferry is not properly attended, it can provide for such an event, as well without a penalty as with one. All the interest the public can have in the proper maintenance of a ferry, so far as it is susceptible of a pecuniary estimate, is the interest of *individuals* having occasion to pass that ferry. It is not a corporate interest, except so far as the government, through its officers or agent, acts as *trustee* for such individuals.

Before the transfer of the right of *Middletown* in the ferry to the turnpike company, the individuals sustaining damages had a perfect and adequate remedy against the *town*. By the transfer, that remedy was taken away. It was necessary that a substitute should be provided. An action on the case against the turnpike company, would be no equivalent. The company might be insolvent; or if not, it might not have funds liable to process. Such corporations seldom have. It would certainly have been a great oversight in the legislature to transfer the obligation in question from a *town* to a corporation having no responsibility beyond its corporate property, (and that perhaps nothing but a highway,) without making other provision for the security of the public. In the very act sanctioning the transfer, the legislature required a bond, *with surety*, to keep and maintain the ferry as in the act provided; *i. e.* to keep good and sufficient boats for the *safe transportation* of passengers, &c.— well furnished with all implements necessary for the service— discreet and skilful men—necessary wharves, &c. that passengers may be landed without delay or *danger*—sufficient land for landing-places, and every thing necessary and convenient for the transportation of carriages, &c. *Stat.* 219,20. 222,3. Now, this bond was precisely what the exigency of the case demanded. It furnished to individuals an adequate remedy in lieu of that which was taken away. Why should it not be available to them?

A condition that the obligors shall provide every thing required by law for the safe transportation of passengers, teams, carriages, &c., is, undoubtedly, *broken,* by a failure, whether the

damage be sustained by a public corporation or a private individual. It must have been the intention of the legislature, that the company should be liable for the consequences of such breach to him or them who should sustain the damage. Now, in the present case, no damage appears to have been sustained, by any person, except by the owners of the horses, wagon and loading mentioned in the replication.

It is very obvious, that if the bond is not taken as a security for individuals, the recovery would be, in every instance, for damages merely *nominal;* for the public could sustain, in its corporate or collective capacity, no pecuniary damage. The circumstance, therefore, of providing a penalty (2000 dollars) sufficient to cover all damages, which would ordinarily be sustained, by a breach, leads irresistibly to the conclusion, that like sheriff's bonds, probate bonds, &c., it was taken for the benefit of those who might be damnified; for, if this were not the object, such a penalty would be wholly unnecessary and useless. In this case, the damages were laid at 500 dollars; and the facts set up shew, that this amount only could have been sustained. It is true, that breaches are assigned, from which the owners of the property mentioned in the replication, sustained no damage; but for these breaches it would not have been the duty of the jury, under the statute, to give any thing but nominal damages, and therefore, they cannot be presumed to have done so. If the replication do not shew, that *actual* damages have been sustained, by the breach in question, nominal damages only can be given by the jury.

If it be said, that it cannot be known for which of the breaches the jury have found the damages, or for how much the treasurer is trustee for the individuals; the answer is, that the penalty may have been forfeited, by several of the breaches set up in the replication, but the damages must have been given for that breach which occasioned them, and for the benefit of those only who sustained them; for to no one else would any thing but nominal damages be equitably due. So in *Warren v. Powers,* 5 *Conn. Rep.* 374. which was a suit on a probate bond, there were various breaches, by which the forfeiture was incurred, for which no damages were rendered. Those were estimated according to the sums found due to the creditors remaining unpaid.

If it be further said, that the statute does not authorize a

*Middlesex,
July, 1835.*

Spencer
*v.*
Watkinson.

suit on this bond, by individuals, or by the treasurer for their benefit; neither does it in any analogous case: it does not in the case of a probate bond; nor did it in the case of *Skinner,* treasurer, v. *Phillips,* sheriff, 4 *Mass. Rep.* 68. 72.; but the court held, that such was the *intention.* The bond, in that case, was conditioned "that he would execute all the duties of his office and answer the malfeasance of his deputies." City sheriffs are required to give bonds with sureties for the faithful discharge of their offices; but no provision is expressly made authorizing individuals to take benefit of the bond. Still, who ever doubted that they may? So the sheriff of the county is required to give bond to the treasurer of the state, conditioned for the faithful discharge of his duties, and to answer all damages an individual may sustain; and there is no provision authorizing the treasurer to sue, or suffer a suit, on a sheriff's bond, for the recovery of the damage an individual may sustain. Nor do the additional words make it any more a security for individuals than it would have been, if it had been like that required of the city sheriffs. A bond conditioned for the faithful performance of the duties of the office, with a penalty, is necessarily a security to cover all damages sustained by a breach. The object can be nothing else; and the statute authorizes nothing more to be recovered. "Where the state has received no injury, we ought to conclude," says Ch. J. *Parsons,* "the damages are to be recovered for the use of those who have suffered them." 4 *Mass. Rep.* 73.

A recovery by the treasurer, in trust for a party, would, of course, be a bar to a private suit by him.

Church, J. No opinion was expressed, at the trial, upon the objection which now forms the ground of this motion for a new trial; but the jury was directed, if the facts alleged in the replication were proved, to assess the plaintiff's damages and return a verdict in his favour, subject to the opinion of this Court upon the question suggested by the motion.

This question is now to be considered; and it is, whether in an action upon the bond in suit, in favour of the treasurer of the state, the damages sustained by individuals, passengers across the ferry at *Middletown,* and occasioned by a neglect of the *Colchester & Chatham Turnpike Company* to keep said ferry in good order, as averred in the replication, can be recovered?

*Middlesex*,
July, 1835.

Spencer
*v.*
Watkinson.

The bond is given to the treasurer, in his public, official character and capacity; and no intimation is any where expressed in it, that the treasurer, as obligee, is to stand as trustee for private individuals, as claimed by the plaintiff. We are to look, then, to the statute requiring this bond, or to the common law, to determine whether the plaintiff is such trustee; and whether the persons named in the replication can resort to this bond, in his name, to enforce a remedy for the recovery of damages sustained by them?

That the injury complained of can be redressed and the damages sustained be recovered, is unquestionable: the common law has provided an adequate remedy, by action against the turnpike corporation, the owners of the ferry or franchise. But the statute requiring this bond, we think, has furnished no new or additional remedy for this injury.

The question arises upon the construction of the statute entitled " An Act relating to ferries," the first section of which provides, that towns within whose limits ferries are or shall be established, or towns adjoining to ferries, shall keep the same in *good order*, according to various regulations in subsequent sections prescribed. And it is here to be remarked, that this duty is imposed upon such towns, whether they be owners of the franchise or not. The second and third sections direct the manner in *which all ferries* shall be kept, furnished and attended; this ferry across *Connecticut* river, at *Middletown*, as well as all others. The fourth, fifth and sixth sections contain some general directions applicable to all ferries, but not material to the present enquiry. The seventh section provides for the appointment of commissioners of ferries, and prescribes their duties. These duties are to enquire into the management of ferries, to inspect the boats, scows, oars, wharves, causeways and landing-places, and to see if suitable ferry-men are employed; and if, upon such inspection, they shall find any ferry deficient, in any respect required by law, it becomes then their duty to notify the select-men of the town or towns whose duty it is to keep such deficient ferry in good order, and to order such defects to be repaired; and upon the neglect of the select-men to comply with such order, it is made the further duty of the commissioners to repair such defects and make report of the expense to the county court; which court shall liquidate such expense and issue execution therefor against such negligent

town. The same section provides, that all commissioners of ferries shall be appointed by the senate, except commissioners on this *Middletown* ferry, for whose appointment a different provision is subsequently made.

We cannot fail to discover, that in these various regulations, the legislature had one great object in view ; which was, to provide for the safety of passengers, to guard against exposure to danger ;—indeed, to *prevent* injuries, and not to *redress* them. The purpose was general, and intended to extend to every ferry in the state : no exception is intimated, and no discoverable reason existed for exceptions.

By the tenth section of the same statute, this ferry was transferred to the *Colchester & Chatham Turnpike Company,* and the duty of keeping and maintaining it was imposed upon that corporation ; and the commissioners upon that turnpike were constituted commissioners upon this ferry. In these respects only, this ferry was made to differ from others ; and as the town of *Middletown* was discharged from the obligation of keeping it in good order, a corresponding difference in the mode of enforcing the orders of the commissioners became necessary. Instead of an execution against the town, there must be a remedy against the turnpike company ; and therefore, this section, by virtue of which the bond now in suit was required and executed, requires that the *Colchester & Chatham Turnpike Company* "shall become bound, in the sum of two thousand dollars, with surety, to the acceptance of the treasurer of this state, to keep and maintain said ferry, as is *in this act provided.*" It was as necessary that this ferry should be placed under the supervision of commissioners, as any other ; and that here, as well as elsewhere, they should perform the same duties, and exercise the same powers. We cannot discover, thus far, any intention expressed in this statute of imposing burdens upon the *Middletown* ferry, not common to all others ; or of conferring privileges upon passengers here ; nor of extending to them remedies not enjoyed by others.

If we could see no other necessity for the bond in question, than that it should, as the plaintiff claims, remain as a fund to which individual sufferers might resort, we might be induced to sustain the plaintiff's claim. But other and very different reasons, not only required the bond, but rendered it indispensable. The commissioners upon this ferry, upon neglect of the

*Middlessx*,
July, 1835.

Spencer
*v.*
Watkinson.

turnpike company, whose primary duty it is, are, by the general provisions of the law, obliged "to cause its deficiences and defects to be repaired, and furnished, and supplied, as soon as possible, to answer the law." In the discharge of this duty, as public officers, and for the public benefit, they must, necessarily, incur expense, which the state from its public treasury is bound to refund, and which the negligent corporation, by means of this bond, is bound to restore. And the expense thus incurred, by reason of the non-performance of the condition of the bond, constitutes a proper subject of recovery, in an action upon it. Thus entire harmony and unity of purpose are seen in the various legislative enactments on this subject. All ferries are placed under the same general regulations and supervision, subjected to the same duties, and responsible, though necessarily in different forms, essentially to the same extent. The public convenience and safety, so far as legislation could affect them, have been secured; and passengers have been left to resort to the ample remedies furnished by the common law, for the redress of their private injuries.

Other considerations confirm us in this opinion. The bond is required, that the *Colchester & Chatham Turnpike Company* shall "keep and maintain said ferry as *is in this act provided.*" The various regulations referred to, as has been seen, were made only to prevent injury; such, therefore, must have been the purpose of the bond.

If the claim of the plaintiff be recognised, and the damages, as claimed in the replication be recovered, and paid into the treasury of the state, we know not how the claimants can even then recover them, without the aid of legislative interference. Let it be supposed, that several passengers are injured, in their persons or property, by *the same* deficiency of a ferry or negligence of ferry-men, at the same time; and in an action upon this bond, a sum is recovered equal to the entire damage sustained by them all. How shall it be apportioned? And how can the General Assembly apportion it, upon application, without instituting a new enquiry, which may result in a very different estimate from that made by the court and jury?

It has been suggested, that although the bond was intended to furnish the means of reimbursing the expense incurred by the commissioners, in the performance of their duties; yet this object is not inconsistent with the additional one of providing

the means of redressing private injuries. In reply to this suggestion, it may be said, that the statute under consideration intimates no such double purpose, and a presumption of a contrary character is very strong. The penalty of the bond, as required, is only two thousand dollars; and there is no provision for its renewal or increase; and it would be strange, indeed, if the legislature intended this small amount should be divided between public and private demands upon it, when it must have been anticipated, that claims like the present would probably soon exhaust it, and leave the public remediless.

An argument much relied upon, in support of the claim of the plaintiff, was, that the *Colchester and Chatham Turnpike Company* was insolvent, and unable to respond in damages to individuals; and therefore, the bond was required as an indemnity for them. It is sufficient to say, in answer, that the fact of such insolvency does not appear, and is not to be presumed. Indeed, it would be too much to presume, that the legislature bestowed this franchise upon that corporation, and entrusted it with the performance of duties so interesting to the public, knowing that it was, and would continue to be, insolvent.

From the view of the statute thus taken, we are persuaded, that the treasurer of the state, in accepting the bond in question, did not become the trustee for individuals situated as are the claimants in the present case; but we believe the bond was required for important public objects alone.

A consideration of such adjudged cases as we have seen, bearing upon this question, strengthens the opinion now expressed.

The case of *Crocker*, treas. v. *Fales* & al. 13 *Mass. Rep.* 260. was an action of debt on bond, made by the defendants, to the plaintiff, as treasurer of the county of *Bristol*. The bond was given, by *Fales*, the principal, as clerk of the court of common pleas for that county, by virtue of a statute of the Commonwealth of *Massachusetts ;* and the condition of it was, that the said *Fales* should " well and truly discharge and perform all the duties of the same office, and keep up the records of the same seasonably, and in good order, &c." The defendant pleaded performance. And the plaintiff, in his replication, averred, that one *Soper* was crier of said court of common pleas, and that the defendant, as clerk, &c., had received certain fees

to which said *Soper* was entitled, and had refused to pay them over. To this replication there was a demurrer. The replication was adjudged bad; and *Parker*, Ch. J., in delivering the opinion of the Court, says : " There is nothing in the act which shows a design to protect individual sufferers, &c. The bond is given to the treasurer of the county, as the representative, in this respect, of the inhabitants. There is no mode prescribed, by which an individual is to maintain an action upon the bond. Nor is there any authority given to the treasurer to deliver over the bond, or to pay over the proceeds of a judgment to him who shall cause the suit. Nor is the person for whose use the action may be brought, made liable for the costs. The damages recovered by any one might consume the whole penalty, and the public be left without any security." This reasoning is sound, and is as applicable to the present as to the case in which it was used. The judge, as an additional argument, alludes to the special purpose of the statute in requiring the bond, and which is not applicable to the present case.

In the case of *The Corporation of Washington* v. *Young,* 10 *Wheat.* 406. the defendant was manager of a lottery, drawn in pursuance of an ordinance of the corporation, and had given his bond to the corporation, as required by the ordinance, in the penalty of 10,000 dollars, with a condition truly and impartially to execute the duty and authority vested in him. It did not appear, either from the ordinance or the bond, that the bond was taken for the benefit of the fortunate adventurers in the lottery, or that they had a right to avail themselves of it. The action was prosecuted upon the bond so given, in the name of the corporation of *Washington,* by a person entitled to a prize ticket ; and it was holden, by the supreme court of the *United States,* that without the consent of the corporation, the action could not be sustained. *Marshall,* Ch. J., in giving the opinion of the court, says : " No person who is not the proprietor of an obligation, can have legal right to put it in suit, unless such right be given by the legislature."

The bond in suit cannot be assimilated to sheriff's bonds, or bonds taken by judges of probate. In the case of sheriff's bonds, the condition prescribed by statute, is, " to answer all damage, which *any person or persons* may sustain, by any unfaithfulness or neglect, in the discharge of the duties of his

*Middlesex,*
*July,* 1835.

Spencer
*v.*
Watkinson.

*Middlesex,*
July, 1835.

Spencer
*v.*
Watkinson.

office ;"—a condition at least unnecessary, if the claim of the plaintiff, in the present case, can be supported.

Bonds given to judges of probate, are of a peculiar character ; and although individuals may be indirectly entitled to the money recovered upon them, yet it is only through the exercise of the jurisdiction of the court of probate, that they are so entitled. Every thing done by a court of probate, within its usual and ordinary jurisdiction, is for the benefit of private individuals ; and such is the object of almost every order and decree of that court ; and probate bonds are required chiefly, if not entirely, to enable such courts, by means of them to enforce their decrees. And when a recovery is had upon such bonds, the courts of probate have jurisdiction of the moneys recovered, to distribute or appropriate them according to law.

A majority of the court is, therefore, of opinion, that, inasmuch as the judge, at the trial, did not instruct the jury, that the plaintiff on the record was not entitled to recover for the damages claimed to have been sustained, by *Henry Strong* and others, as set forth in the replication, a new trial should be granted. But we are all of opinion, that the declaration is sufficient, and that a breach of the condition of the bond is sufficiently averred, in the replication, to enable the plaintiff to recover nominal damages. And the superior court is to be advised, that the motion in arrest of judgment should be overruled.

BISSELL and WAITE, Js. were of the same opinion.

WILLIAMS, Ch. J. and HUNTINGTON, J. dissented.

Motion in arrest overruled ;
New trial to be granted.