BARNES, to use of HAYES, Plaintiff in Error, *vs.* WEBSTER, Defendant in Error ; and
UNITED STATES, to use of HAYES, Plaintiff in Error, *vs.* FERGUSON, Defendant in Error.

A., commencing an attachment suit against B., in the United States Circuit Court, executed a bond to B., conditioned to pay all damages that might accrue to B. or to any garnishee, by reason of a failure to prosecute the suit, with effect and without delay. *Held,*

1. In case of a breach of the bond, B. may maintain a suit thereon to the use of any garnishee who has been damaged.

2. Such a bond, although voluntary and not authorized by any statute, is good as a common law bond.

3. A bond with the same condition, made to the United States, instead of B., is valid, although not executed in pursuance of any law, nor in connection with any business of the United States, nor any duty of the obligor to them. A garnishee may sue on such a bond, in the name of the United States, to his use.

### *Error to St. Louis Court of Common Pleas.*

Barnes, to the use of Hayes, brought an action in the St. Louis Court of Common Pleas, against Webster, on a penal bond for $1,743, dated April 3d, 1844, reciting that one Ward had brought a suit by attachment in the United States Circuit Court, against said Barnes, and conditioned that if the said Ward should prosecute his suit with effect, without delay, and should pay all damages that might accrue to the defendant,

Barnes, or to any garnishee, in consequence of said attachment, that the obligation should be void, otherwise to remain in full force and effect.    The declaration then avers, that Hayes was, on the 5th day of October, 1841, summoned as garnishee in said cause, and all debts due from him to said Barnes, attached in his hands.    The main breach is, that Ward did not prosecute his suit with effect, but, on the contrary, at the April Term 1845, of the United States Circuit Court, the attachment was dissolved, the suit dismissed, and Hayes, the garnishee, discharged ; that by reason of the premises, Hayes was injured and had sustained damages to the amount of $1,743, which Ward refused to pay.    The declaration does not aver that Barnes, the plaintiff in the suit, had sustained any damage, by reason of any breach of the bond.    The defendant, Webster, demurred generally, and the demurrer was sustained, on the ground that the declaration did not aver that Barnes, the plaintiff, had sustained any damages by the alleged breach of the bond, and that Barnes had no legal interest in the damages stated in the declaration to have been sustained by Hayes, and that neither Hayes nor Barnes could, in this form, if in any, recover such damages on the bond.

*E. Bates*, for plaintiffs in error.

In view of the record, the ground upon which the Court of Common Pleas sustained the demurrer, is not a construction of the bond, for that is plain and admits of but one meaning ; but it presents the question, whether or not the obligor could legally make such a bond, or the obligee receive it ; and the court, in effect, decided that Webster and Barnes could not contract, the one to pay and the other to receive such damages as Hayes, the garnishee, might suffer by reason of the attachment.    It is hard to conceive of a law denying the power of the parties to make such contract, and if they could legally make it, the court must, of course, enforce it according to its terms.    The breaches are the exact negatives of the language of the condition, and therefore, on the demurrer, which admits the facts as stated, there can be no objection, but to the legal

validity of the bond, or the condition itself. I assume, that it is the right of every free man to bind himself in any contract, that is not either wrong in itself, forbidden by law, or injurious to some other person; and this bond is neither. It is a bond volunteered by Webster, to advance the ends of an attachment suit, in which he had no concern, but in which Barnes was defendant and Hayes garnishee. The suit was pending in the federal court, and it may fairly be inferred, (and, in fact, it was so,) that the bond was given under the circumstances, and by analogy, to the like proceedings in the state courts, under our statute. Rev. Code 1835, Attachment, article 1, section 38. There is no act of congress regulating suits by attachment, nor giving jurisdiction of attachment cases; and therefore, unless the federal court has jurisdiction of the person of the defendant, it cannot entertain the attachment of his property. See 12 Pet. Rep. 300, *Toland* v. *Sprague*; which is recognized in 15 Pet. 167, *Levy* v. *Fitzpatrick*. The attachment suit, in which this bond was given, was held on for several terms, to get personal service on the defendant, but failing in that, the attachment was dissolved and the suit dismissed. If it be urged here, as below, that the law required no bond in this case, I answer, that a voluntary bond is, at least, as good as a bond made under compulsion of law or duress of fact. Every security in a bond is a volunteer; and that is not only so among private persons, in their ordinary business, but applies equally to the government and its agents. See 5 Pet. Rep. 115, *United States* v. *Tingey*. A bond voluntarily given to the United States, and not prescribed by law, is a valid instrument. And this case is recognized in 10 Pet. Rep. 343, *United States* v. *Bradley*. And this principle is constantly acted on, and carried out in practice, in the circuit and district courts of the United States. See 4 Wash. C. C. R. 620, *United States* v. *Howell*—to the effect, that officers of the government may, without any law, take security from the debtors of the public. Again, Gilpin's D. C. R. 561, ——— v. *Rice*—to the effect, that the Post-

master General has a right to take bonds from his deputies, although not required by law. And again, 1 Gallis. C. C. R. 476, a voluntary bond given upon the delivery of property to a claimant, on his application, is good, although the condition does not conform to the statute.

*Geyer & Dayton,* for defendants in error, submit the following propositions:

I. The declaration shows no cause of action in favor of the plaintiff against the defendant. The bond sued on is a penal one, and the penal sum, in case of a breach, though the limit, is not the measure of damages. The obligee can recover only such damages as he has actually sustained by a breach. The declaration, in this case, does not aver that the plaintiff had sustained any damages from any breach of the bond, or that he had any legal interest in the damages, stated to have been sustained by Hayes, the garnishee. It is, therefore, bad, unless it is authorized and can be maintained under the provisions of our statute concerning penal bonds.

II. The declaration is not aided by statute. The act of 1835, in force when the bond sued on was made, and the act of 1845, are identically the same, so far as they relate to this question. Each of these statutes provides, that suits on certain classes of bonds can be brought in the name of the obligee, to the use of the party injured, but only in cases where, by the law of this state, such party is authorized to prosecute a suit to his own use on the bond. See secs. 15 and 28, act of 1835, p. 432–3, and secs. 15 and 28, act of 1845, p. 407–8. The bond in question is not under, in obedience to, or in conformity with any statute of Missouri, though it is claimed to be under the 38th section of the act of 1835, concerning attachments. Revision of 1835, p. 81. But that act, or any other, does not authorize a suit upon the bond mentioned in said section 38, in the name of the obligee to the use of the party injured. This bond is not of the class mentioned in the 28th section of the acts of 1835 or 1845, concerning penal bonds, and if it were, it is not within the

provisions of the 15th section of said acts, because, by no law of this state is any person authorized to prosecute a suit to his own use upon such bond. We submit, therefore, that Hayes, the party claimed to have been injured, cannot, by virtue of our statute, maintain an action in the name of Barnes to his use on this bond, and that the declaration in this case derives no support from the statute. We do not understand the 28th section of the act concerning penal bonds to authorize, in respect to the bonds therein embraced, the person aggrieved to prosecute a suit in the name of the obligee to his use, except in three cases, when the statute, in providing for giving the bond, also provides, that any person aggrieved may prosecute a suit to his own use upon it. We contend, that suits on the bonds, embraced by the 28th section, are subject to the same restriction mentioned in section 15, in respect to official bonds.

The bond of an administrator must be to the state of Missouri, Rev. Stat. 1845, p. 35, sec. 15, article 1st of act concerning executors and administrators ; also, the bond of an executor, sec. 17, same article and act, p. 36. The bond of an executor or administrator may be sued on, at the instance of the party injured, in the name of the state, to the use of such party. Section 8, article 7, of same act, p. 57, Rev. Stat. 1845.

The bond of a sheriff must be to the state. Section 3 of act concerning sheriff and marshal, p. 524, Rev. Stat. 1845. Any person aggrieved may have, in certain instances, his action against the sheriff on the official bond. Section 58 of act concerning executions, p. 247 of Rev. Stat. 1845.

Bond of a constable must be to the state. Section 2 of act respecting constables, p. 111, Rev. Stat. 1845. It may be sued on, at the instance of any person injured by its breach. Section 6, same act, p. 112.

Bond of recorder must be to the state. Section 5, act of 1845, p. 476, respecting recorder. May be sued on by party aggrieved in the name of the state, to his use. See same section and page of act of 1835; section 20 of act of 1845, p. 478.

Barnes *v.* Webster.

Replevin bond is given to the sheriff, or other officer executing the writ. Section 5, act of 1845, concerning replevin, Rev. Stat. 1845, p. 479. The bond may be sued on in the name of the officer, to the use of the party injured. Section 14, same act, p. 480.

The bond to be given by a plaintiff, under the act of 1845, concerning attachments, must be to the state of Missouri. Section 4 of said act, Rev. Stat. 1845, p. 74. This bond may be sued on at the instance of any party injured, in the name of the state, to the use of such party. The bond to be given by the plaintiff, under the attachment act of 1839, was to the state, (laws of 1839, p. 6, sec. 3,) but does not authorize suit in this form.

The bond of notaries public to be to the state. Rev. Stat. of 1845, section 7. May be sued on by any party injured, section 8.

The bond sued on, not being a statutory one, or within the provisions of the statutes aforesaid, cannot be sued upon, in the form adopted, for any damages but such as were sustained by the plaintiff, and as none are alleged to have been sustained by him, the demurrer was properly sustained.

All the above considerations are also urged in the case of *United States* to the use of *Hayes* v. *Ferguson*. The following further point is also made : that a bond in terms to the United States, and for the purposes indicated in the one in question, is not valid and binding, not being executed in pursuance of any law, nor in connection with any business of the United States, or any duty of the obligor to the United States. No one was authorized to accept such a bond for the United States, and therefore, there was not, and could not have been any delivery to the United States, a fact essential to the validity of a bond.

SCOTT, Judge, delivered the opinion of the court.

1. By the common law, when a bond was given for the payment of money, with a defeasance to be void upon the performance of a collateral undertaking, if there was a breach of

the condition, the whole penalty was forfeited and might be recovered in an action on the bond. Courts of chancery, however, whose province it was to relieve against forfeitures, would restrain the collection of the penalty and compel the plaintiff to receive such damages as he had actually sustained. The statute of 8 and 9 of William III, dispensed with the necessity of resorting to chancery, by requiring the plaintiff to set out the breaches and show the damages occasioned thereby. Judgment was entered for the penalty, and a memorandum was endorsed on the execution, that it might be discharged by the payment of the damages assessed and the costs. The judgment remained, as a security for the future breaches of the condition of the bond, the remedy for which was enforced by *scire facias toties quoties*, until the penalty of the bond was exhausted. This statute extended to those bonds only, in which the obligee himself was injured by a breach of the condition. The provision with respect to official and other bonds, by the breach of the condition of which, others than the obligee might be injured, was an extension of the terms of the statute of 8 and 9 of William III. At common law, if A. covenanted with B. to pay C. a sum of money, B., for the use of C., may maintain an action on this covenant. 3 Chit. *Robbins* v. *Ayers*, 10 Mo. Rep. Under the equity of the statute, the obligee is regarded as trustee for those who may sustain an injury by the breach of the condition, as it is supposed that the collection of the penalty, which is forfeited by the breach, would, in a court of equity, be restrained only by the payment of the damages sustained by him, for whose use and benefit the bond was given. In the case of *McRea* v. *Evans*, 2 Dev. 383, it was held, that a bond given to a trustee with condition to secure the rights of others, may, at common law, be put in suit in the name of the trustee, and an injury to a *cestui que trust*, assigned as a breach. That the act authorizing official bonds to be put in suit, by persons injured by the misconduct of the officers, without an assignment, is an affirmance of the common law, and although coroner's bonds are not mentioned in

it, they may be sued on in the same manner. To the same effect is the case of *Skinner* v. *Phillips*, 4 Mass. Rep. 68. This last case is not impugned by that of the *Commonwealth* v. *Hatch*, 5 Mass. 193 ; for there it appears, that the bond was given for the sole use of the Commonwealth, and, of course, no one but her authorized agents could put it in suit. The rights of individuals were not designed to be protected by it, and, of course, they had no right to sue. The plaintiff is regarded as a trustee, for those who may be injured by a breach of the condition ; they have a right to use his name in the prosecution of the suit, and as the obligors could only get relief, at common law, by paying the damages actually sustained by the breach, so, on the forfeiture of the penalty, though the plaintiff has sustained only nominal damages, yet the defendant cannot be relieved, but by the payment of the damages which another may have sustained by breach of the condition of the bond made for his use and benefit. In other words, the plaintiff sues for the benefit of those for whom the bond was given as an indemnity, and the case, if not within the letter, is within the spirit of the law. This determination has not been made without an examination of the cases of *Pickering* v. *Fisk*, 6 Ver. 104. *Spencer* v. *Watkinson*, 11 Conn. 1. *White* v. *Wilkins*, 24 Maine, 299.

2. It is needless to cite authorities that this bond, although voluntary, and not authorized by any statute, is good as a common law bond. All bonds, though voluntary, if they do not contravene public policy, nor violate any statute, are valid and binding on the parties to them.

3. As regards the case in which the United States is the obligee and plaintiff, we do not see the force of the objections, that a bond to the United States, for the purposes indicated in that one, is not valid, not being executed in pursuance of any law, nor in connection with any business of the United States, or any duty of the obligor to them ; and that, no one being authorized to accept the bond, there could be no delivery of it. In the multiplied transactions of the government of the United

States, in both the executive and judicial departments, many cases occur, in which it is deemed necessary and prudent to take bonds, though there is no statute authorizing them. In all such cases, it is very convenient to make the bonds payable to the United States, as, thereby, many delays are prevented and intricate questions avoided, which would arise upon bonds payable to individuals or officers, by reason of deaths, successions, &c. The United States are not liable for costs, and no evil can arise from this practice. The process of foreign attachment can be issued by the Circuit Courts of the United States, in cases where the defendant is found within the district in which the process issues, so that it can be served upon him. In analogy to the practice which prevails in this state, bonds may be given before the process issues. Such bonds would stand upon the same footing as the bonds in the cases of the *United States* v. *Tingey*, 5 Pet. 115. *United States* v. *Bradley*, 10 Peters, 343. *Postmaster General* v. *Rice*, Gilpin's Rep. 561. *Postmaster General* v. *Norvell*, ib. 120. In all these cases, the acceptance of the bond was presumed, although there was no law authorizing the officer to take them.

Judge Ryland concurring, the judgment is reversed, and the cause remanded. Judge Gamble not sitting.