THE STATE *ex rel.* LAFAYETTE COUNTY v. O'GORMAN, *Appellant.*

1. **County Clerks:** THEIR LIABILITY TO ACCOUNT FOR FEES. The act of March, 1868, requiring the clerks of courts to render accounts and to pay into the county treasury all the emoluments of their offices beyond the allowances prescribed by the act, applied to the clerks of the county courts. Sess. Acts 1868 p. 54.

2. ———: ———: JUDGMENT BINDING ON SURETIES. Where a county clerk and the sureties in his official bond, being sued by the county for a surplus of fees alleged to be withheld from the treasury, defended on the ground that he had made and the county court had approved a statement and settlement of his accounts, and that by

such settlement it appeared there was no surplus; *Held*, that a judgment of the circuit court setting aside such settlement as having been obtained by fraud was admissible in evidence, and was binding upon the clerk and his sureties alike.

3. **Limitations**: NON-SUIT. The statute which provides that a party who suffers a non-suit in an action commenced within the time prescribed by the statute of limitations, shall have the right to commence a new action within one year, applies as well to voluntary as to involuntary non-suits. R. S. 1879, ¿ 3239.

4. **Official Bonds.** An official bond is binding upon all who sign it though it is not in the form prescribed by statute.

5. **Practice**: HARMLESS ERROR IN ADMITTING EVIDENCE. Where undisputed evidence fixed the amount of recovery at a sum greater than that for which plaintiff obtained judgment, *Held*, that error committed in admitting evidence of a further amount was no ground for reversal.

6. **Public Officers**: SETTLEMENT OF ACCOUNTS: JURISDICTION. Failure of an officer to comply with a law requiring him to settle his accounts with the county court, will give the circuit court jurisdiction in an action brought on his official bond, to investigate his accounts and make the settlement.

*Appeal from Ray Circuit Court.*—HON. G. W. DUNN, Judge.

AFFIRMED.

*Alex. Graves* for appellants.

*Wallace & Chiles* for respondent.

NORTON, J.—This suit was instituted in the Lafayette county circuit court on a bond executed by defendant O'Gorman as county clerk of said county with his co-defendants as sureties.

The petition set out at great length the cause of action, which being stripped of its verbiage substantially alleges that O'Gorman was elected county clerk of the county court of Lafayette county for four years, his term of office commencing on the 1st day of January, 1871, and ending on the 1st day of January, 1875; that before entering on his duties he executed the bond sued upon, in the penal sum of $5,000, to be void on condition that he faithfully

discharged all the duties of clerk of the county court in accordance with law; that by virtue of an act of the general assembly passed March 21st, 1868, it became the duty of said O'Gorman at the end of each year to deliver to the judges or justices of the county court of said county a statement, under oath and in detail, showing the aggregate amount of fees received by him as clerk during the year last past, and to pay into the treasury, upon the order of the county court, the surplus remaining after deducting from the aggregate of fees received by him the sum of $2,500, and such sums for deputies or assistants in his office as the court might allow; that said O'Gorman did not, at the end of the years 1871, 1872 and 1873 comply with the requirements of said act, in making within the time prescribed, or at any time, a statement of the fees received by him, but on the contrary, and in evasion of the statute and with the design of cheating and defrauding the said county of Lafayette, by false representations, fraudulently deceived and procured the county court to direct and have entered on the records of said court by said O'Gorman the following false and fraudulent entries:

"Lafayette county court, January term, fourth day, January 4th, 1872.

"Now, at this day comes James O'Gorman, clerk of this court, and proves to the satisfaction of the court that the compensation received by him during the last year does not exceed that allowed by law."

And the following, to-wit:

"Lafayette county court, February term, fifth day, February 7th, 1873.

"Now, at this day comes James O'Gorman, clerk of this court, and makes his settlement of all fees received by him for the year 1872, which is by the court approved."

And the following, to-wit:

"Lafayette county court, May term, fourth day, May 14th, 1874.

"Now, at this day comes James O'Gorman and pre-

sents to the court here, his statement proving to the satisfaction of the court that the amount of fees received by him does not exceed that allowed by law, said statement being for the year 1873, and which is by the court approved and ordered filed."

It is then averred that Lafayette county court instituted a suit for the purpose of vacating said orders, the venue of which being changed to the circuit court of Ray county, the cause was in that court tried at its February term, 1877, and a judgment rendered in March, 1877, vacating and overruling said orders on the ground that they were fraudulently obtained to be made by said O'Gorman; that afterward at the June term, 1877, of the Lafayette county court, the said court ordered a citation to be issued to said O'Gorman requiring him to appear at the July term of said court and make the statements required by the act of 1868, of the fees received by him for each of the years 1871, 1872 and 1873; that at said July term said O'Gorman appeared and filed his motion to dismiss the proceeding, which being overruled he declined and refused to make or file any statement or statements in regard to fees received by him during said years, and also declined further to appear to said proceedings, whereupon the court proceeded to ascertain the fees and emoluments received by said O'Gorman as clerk for each of said years, and found from the evidence, after deducting $2,500 and allowing $2,700 for deputies and assistants for each year, that for the year 1871 there was a surplus of $2,404.39; for the year 1872, a surplus of 4,629.36, and for the year 1873, a surplus of $2,583.77, which respective sums so found O'Gorman was ordered to pay into the county treasury.

The petition then assigns six breaches of the bond; and as the court found for defendants on the first, second, third and fourth breaches, it is only necessary to notice the fifth and sixth, upon which the finding was for plaintiff. The fifth breach in substance is, that defendant failed to make any statement as required by law of the fees received

by him for the year 1872, that he had received for that year the sum of $4,679.36 in excess of what he was entitled to retain as clerk, had not paid the same into the treasury, but had converted the same to his own use. The sixth breach was for O'Gorman's failure to account for the fees of the year 1873. It is also averred that plaintiff commenced an action against defendants on said bond, in the circuit court of Lafayette county on the 16th day of December, 1875, and assigned the same breaches as breaches five and six assigned in this suit; that defendants appeared to said action, and plaintiff on the 21st day of August, 1876, suffered a non-suit in said action.

Defendants O'Gorman and Allen answered separately, and each of them set up the statute of limitations as a bar to the plaintiff's suit. Defendant Aull also answered separately, and after pleading the statute of limitations, also set up that the county court had settled with said O'Gorman for all fees received by him for the years 1871, 1872 and 1873, and relied upon the orders made by said court and particularly set out in the petition of plaintiff for each of these years.

Plaintiff in his replication denies the new matter set up, and avers that the commencement of an action within the time prescribed by the statute was prevented by the fraudulent conduct of said O'Gorman in making fraudulent settlements with the county court, and avers that while a suit was pending to set aside and vacate said settlement and orders, plaintiff, on the 16th day of December, 1875, commenced an action on said bond, assigning the same breaches as set forth in breaches four, five and six, in the present suit; that defendants appeared to said action, and on the 12th day of August, 1876, plaintiff suffered a non-suit and commenced the present suit on the 19th day of July, 1877, within one year after such non-suit. It is also averred that the settlement and orders relied upon by defendant in his answer had been vacated and set aside as fraudulent by a decree of the Ray county circuit court, to

which court a suit, commenced in Lafayette county circuit court for the purpose of setting aside and vacating said orders, had been transferred by a change of venue.

On the trial the court found for defendant on the first, second, third and fourth breaches assigned, and for plaintiff on the fifth and sixth breaches, and rendered judgment accordingly, from which defendants O'Gorman and Aull have appealed to this court. The record is a voluminous one, the pleadings covering twenty-eight pages of printed matter, and the instructions given and refused nearly sixteen pages. We will not go into a detail of the mass of matter thus presented, but will confine our examination to the vital points which the record presents.

The first ground upon which the correctness·of the judgment is questioned by counsel is, that the 1st section of the act of March, 1868, (Acts 1868, p. 54,) did not apply to county clerks, because said section required the statements therein referred to, to be made to the judge or judges of their said courts, and that as the persons composing the county courts are styled in the act creating them, justices of the county court, it was not, therefore, intended to include county clerks. This is, we. think, an entire misconception of the section. It is as follows: "The clerks of the several courts established by the constitution or the laws of the State, shall, except as hereinafter provided, at the end of each year during their respective terms of office, deliver to the judge or judges of their said court, under oath or affirmation, a statement in detail showing the aggregate amount of all official fees and emoluments received by them as clerks during the year last past." The county court is a court established by law, and the clerk of such a court is, by the very terms of the act, required to make the statements therein mentioned, and the terms "judge or judges" can be understood in no other sense than as including county court justices. This is shown by the definition of the term. The word judge is defined by Bouvier.to .be, "A public officer lawfully appointed to

*1. COUNTY CLERKS: their liability to account for fees.*

decide litigated questions according to law. This, in its most extensive sense, includes all officers who are appointed to decide such questions, and not only judges properly so called but also justices of the peace and jurors, who are judges of the facts in issue. In its more limited sense the term judge signifies an officer who is so named in his commission and who presides in some court." The same author defines justices to be: "Officers appointed by a competent authority to administer justice. They are so called because in ancient times the Latin word for judge was *justicia.*" In various sections of the statute the words judges and justices of the county court are used interchangeably and in the same sense, an example of which is to be found in the very act which declares that the members of the county court shall be styled "justices of the county court." Section 21 of said act, (Wag. Stat., 442,) provides that "it shall be lawful for judges or justices of the county court, not otherwise disqualified, in all counties of the State, to practice as attorneys and counselors at law in all courts, except the county court of which such person shall be a judge or justice, and in cases where the county is a party thereto."

It is also insisted that said act of 1868 does not apply to county clerks because the court which examines the statements required of a clerk is directed to make an order and cause the same to be certified to the county court of the proper county, requiring such clerk to pay the surplus which may be found in his hands after making the deductions authorized by the act, into the treasury of the county. Inasmuch as the duty of examining statements made by clerks was devolved not only upon county courts but other courts as well, and inasmuch as the act required the surplus found to be in the hands of the clerk making the statement, to be paid into the county treasury of the county, the provision referred to directing that the order made upon such clerk to pay into the county treasury such surplus, was intended to perform no other office than to put

·county courts in possession of information which would ·enable them to protect the interest of their respective ·counties in the event of the non-payment of any surplus which any clerk may have been ordered to pay. This being so, the requirement that an order when made must be certified to the county court, has no application to an order made by a county court upon its own clerk to pay into the treasury any surplus found to be in his hands. The objection taken is without foundation, as statutes are to be construed with reference to the object intended by their enactment, and that construction is to be adopted which makes sense rather than nonsense, when the act is susceptible of such construction.

It is also insisted that the court erred in allowing plaintiff to read in evidence the record and judgment ren-

2. ——: ——: dered in the suit instituted against O'Gorman
judgment binding on sureties. to vacate the orders made by the county ·court in 1872, 1873 and 1874; and that it also erred in holding that the effect of the judgment or decree vacating and setting aside said orders was to place O'Gorman, in contemplation of law, as if he had never made any of the statements he was required by law to make, and as if he had never by his affidavit or otherwise satisfied the county ·court that the fees and emoluments of his office for each ·of the years 1871, 1872 and 1873, did not exceed the sum ·of $2,500. We perceive no error either in the admission of the decree in evidence or the judgment of the court in declaring its legal effect. In view of the fact that defendants claimed exemption from liability because of the orders made by the county court in 1872, 1873 and 1874, it was entirely competent for plaintiff to show that the orders thus relied upon had in fact been expunged from the record or vacated by competent legal authority. That the court rendering the decree read in evidence had the authority to render it there can be no question, and that the effect of the decree when rendered was to destroy utterly said order as a defensive shield, both as to O'Gorman and

the sureties on his bond, we think is clear. The decree was not only binding upon O'Gorman but upon all who were in privity with him, and the sureties on O'Gorman's bond sustained that relation. *Walsh v. Agnew*, 12 Mo. 520; 1 Greenleaf Ev., § 523; *Cooley v. Warren*, 53 Mo. 166, 169.

It is also insisted that the court erred in not declaring that plaintiff's action was barred by the statute of limita-

3. LIMITATIONS: tions. It appears that in December, 1875,
non-suit. and within three years from the time plaint-
iff's cause of action accrued for the failure of O'Gorman to make statements for the years 1872 and 1873, plaintiff instituted a suit on his bond for such delinquency, and on the 12th day of August, 1876, suffered a voluntary non-suit, and on the 19th day of July, 1877, the present suit was instituted and the same breaches of the bond assigned that were assigned in the suit in which said non-suit was taken. It is insisted by counsel that inasmuch as it appears that the non-suit taken by plaintiff was a voluntary one, it, therefore, follows that the statute which provides that a party who suffers a non-suit in an action commenced within the time prescribed by the statute, may commence a new action within one year after such non-suit suffered, has no application. The contrary view has been taken by this court in the cases of *Shaw v. Pershing*, 57 Mo. 419, and *Briant v. Fudge*, 63 Mo. 489, and these cases fully sustain the action of the court in holding that the action of plaintiff as to the fifth and sixth breaches was not barred by limitation.

It is also insisted that the bond sued upon is not suffi-cient to bind defendants because it does not contain all the

4. OFFICIAL BONDS. conditions prescribed by the statute. Con-
ceding the bond not to be good as a statutory bond, the conclusion drawn from this fact by counsel by no means follows. If not good as a statutory bond, being voluntary, it is nevertheless good as a common law bond, and the parties executing it are bound by all the conditions it contains, and to the full extent of such conditions. 16 Mo.

APRIL TERM, 1882. 379

The State ex rel. Lafayette County v. O'Gorman.

258; *West v. Thompson*, 49 Mo. 188; *State to use v. Thomas*, 17 Mo. 503; *Gathwright v. Callaway Co.*, 10 Mo. 663; 7 Mo. 458. The condition of the bond sued upon is, "that said O'Gorman shall discharge all the duties of clerk of the county court      *      *      in accordance with law.". This condition of the bond is broad enough to require of defendant O'Gorman the performance of every duty which the law cast upon him as county clerk, as much so as if they had been specifically set forth in the bond. *State ex rel. Mississippi Co. v. Moore*, 74 Mo. 413, and cases cited.

It is also insisted that the court erred in admitting the evidence of Auditor Holladay and his clerk, establishing 5. PRACTICE: harm-  the receipt of certain fees by O'Gorman from less error in ad-
mitting evidence. the State. Conceding that this evidence was improperly received, the error committed in no way affects the merits of the controversy, as the undisputed evidence shows that from other sources O'Gorman received fees for the years 1872 and 1873, properly payable into the county treasury, largely in excess of the penalty of the bond.

The point made that the circuit court had no jurisdiction to determine what amount of surplus remained in. 6. PUBLIC OFFICERS:  O'Gorman's hands for the years 1872 and settlement of ac-
counts: jurisdic- 1873, after deducting the allowances author-
tion. ized to be made him, is not well taken. When a county clerk, of whom such statements are required, fails to make them, he thereby commits a breach of his bond, and in a suit to recover damages for such breach it is entirely competent for the court in which it is pending to ascertain all the facts, and make the settlement which the delinquent officer, by reason of his delinquency, prevented the county court from ascertaining or making.

Other points made by counsel and not herein specially noted, are as groundless as those we have particularly noticed, and perceiving no error affecting the merits of the case, we affirm the judgment, in which all concur.