280

STATE OF MISSOURI, on the Information of JOHN M. DALTON, Attorney General, Relator, v. HARRY F. RUSSELL, Respondent, No. 44651— 281 S. W. (2d) 781.

Court en Banc, September 12, 1955.

*John M. Dalton,* Attorney General, and *C. B. Burns, Jr.,* Assistant Attorney General, for relator.

*Paul Bakewell, Jr.,* for respondent; *Bakewell, Bakewell & Cramer* of counsel.

[781] LEEDY, C. J.—Original action in quo warranto brought by the Attorney General ex-officio. The first count of the amended information (seeking ouster of respondent from office as "a judge of the State of Missouri") has been abandoned; the object of the other, or second, count, as disclosed by its prayer, is that respondent, Harry F. Russell, "be ousted from the exercise of the franchise of practicing law during his term of office as a Judge of the State of Missouri, and while receiving pay as a Judge of the State of Missouri."

The facts are not in dispute, and in brief, are these: Respondent, who had served several successive terms as a Judge of the Eighth Judicial Circuit of Missouri, was, at the general election held in November, 1952, retained in that office, under the non-partisan court plan (Art. V, § 29, [782] Const. of Mo.) for a six-year term expiring December 31, 1958. Subsequently, on October 10, 1953, upon proper proceedings then pending before it, and in conformity with Art. V, § 27, Const. of Mo., the Committee on Retirement of Judges and Magistrates unanimously found Judge Russell to be "unable to discharge the official duties of his office of Circuit Judge of the Eighth Judicial Circuit, St. Louis, Missouri, *with efficiency* by reason of such continued sickness and infirmities [the exact nature of which the findings had previously described]; and that his disability is permanent . . .." Said findings were thereupon entered upon the permanent records of the committee, as directed by Supreme Court Rule 12.07, and the committee forthwith issued an order reading (insofar as here pertinent): ". . . that effective at the close of this day Harry F. Russell be retired from his office as Circuit Judge of the Eighth Judicial Circuit; that thereafter he receive one-half his regular compensation until the end of his term of office . . .." After having been so retired from office, respondent has admittedly practiced law (to a very limited extent), meanwhile receiving one-half the regular compensation formerly paid him as a circuit judge.

The question presented is whether, under the facts and circumstances above outlined, respondent Russell presently continues to be a judge within the meaning of (and, hence, amenable to) that provision of Art. V, § 24, Const. of Mo., which interdicts the practice of law or the doing of law business by judges and magistrates.

Art. V, § 27 of the Constitution, conferring authority upon a committee to retire judges from office for disability, reads, in pertinent part, as follows: "Any judge of a court of record or magistrate who is unable to discharge the duties of his office with efficiency by reason of continued sickness or physical or mental infirmity shall be retired from the office by order of a committee . . . after notice and a fair hearing and on a finding of two-thirds of the committee

that the disability is permanent. The judge so retired shall receive one-half his regular compensation until the end of his term of office. . . .''

The two new and distinctive features introduced into our organic law by the foregoing section upon the adoption of our Constitution in 1945 were these: (1) Supplanting the former cumbersome method of removal of judges from office for disability (through action by the General Assembly with the approval of the Governor, Art. VI, § 41, Const. of 1875) with a speedier, more flexible and efficient committee system; and (2) providing for compensating a judge so removed *"until the end of his term of office."* It may be said at this juncture that it is upon the meaning to be ascribed to the foregoing italicized words of § 27 that this case turns.

At the time of the adoption of the new Constitution there was also in effect a statute (§ 2043, RSMo 1939, which has been carried forward into the 1949 revision as § 478.027, VAMS) under which the authority of a disabled circuit judge (one "unable to qualify for any cause, or to discharge his duties or hold his courts from continued sickness or mental or physical infirmity") might be suspended (pending his recovery) by the Governor appointing a judge pro tem. Such suspension of the regular judge's "power to act" continued until the Governor became satisfied of his competency in all respects to act as judge. Meanwhile the appropriate governmental unit was required to pay full salaries to both. But that statute says nothing about, nor does it seem designed to cover a situation involving, permanent disability, a deficiency which § 27 corrects by providing that a judge so disabled "shall be retired from the office," etc.

That the committee's action in Judge Russell's case created a vacancy in the circuit judgeship theretofore held by him, and the necessity for, and the fact of, the appointment of a successor is conceded by relator. Accordingly, he agrees that respondent is not now a judge of any court, and that he is not eligible for even temporary judicial service under the provision of Art. V, § 6, [783] which authorizes the temporary transfer of "judicial personnel" from one court to another. Notwithstanding this, and seizing upon the provision of § 27 that a "judge so retired shall receive one-half his regular compensation *until the end of his term of office,"* and particularly the words just italicized, relator, on the basis of that language alone, contends that respondent "is still a judge of the state of Missouri." The essence of his whole argument on this point appears in these excerpts from his brief: That "no person can have a 'term of office' unless he occupies an office;" that the section "specifically provides itself that a person retired under such section actually has a 'term of office' and, therefore, holds the office, which office, of course, is that of judge. . . . Therefore, since respondent will, under the provisions of Section 27 of Article V of the Constitution, continue

to receive one-half of his regular compensation until the end of 'his term of office,' we submit that the respondent is at present occupying the position of judge of the state of Missouri."

"The right to hold the office of judge, from whatever source that right is derived, depends on the existence of the office." 48 C.J.S., Judges, § 4.

The Constitution vests the judicial power of the state in certain courts, namely, "a supreme court, courts of appeals, circuit courts, probate courts, the St. Louis courts of criminal correction, the existing courts of common pleas, magistrate courts and municipal corporation courts." Art. V, § 1. Turning now to definitions: "The word judge is defined by Bouvier to be, 'A public officer lawfully appointed to decide litigated questions according to law. This, in its most extensive sense, includes all officers who are appointed to decide such questions, and not only judges properly so called but also justices of the peace and jurors, who are judges of the facts in issue. In its more limited sense the term judge signifies an officer who is so named in his commission and who presides in some court.' " State ex rel. Lafayette County v. O'Gorman, 75 Mo. 370, 375-376. "Judge—One who publicly is charged with and performs judicial functions; one who presides at the trial of causes involving justiciable matters in which the public at large is interested. . . ." Ballentine's Law Dict. (1948). " 'Judge' is a term employed to designate a public officer selected to preside and to administer the law in a court of justice." 48 C.J.S., Judges, § 2. "A judge may be defined as a public officer, who, by virtue of his office, is clothed with judicial powers." 30 Am. Jur., Judges, § 2; Todd v. U. S., 158 U.S. 278, 280; U. S. v. Clark, 1 Gallison, 497.

Relator would concede the untenability of his position had the words in question been "until the end of the term for which he was elected." He points to that provision of the Constitution (Art. III, § 12) regarding the acceptance of appointive office or employment by a member of the General Assembly "during the term for which he was elected" as demonstrating that the framers of the Constitution "clearly realized that there is a difference between 'his term of office' and the period covering the time during the term for which a person is elected." His only other authority is a New York statute (29 McKinney's Consolidated Laws of New York Annotated, § 24) in relation to compensation of certain judges after removal, which relator says makes a difference between a "term of office" and the "term for which he was elected." We find it inapposite. Such statute provides that a judge within its protection shall continue to receive one-half his salary "until the expiration of the term for which he was elected, or until the time fixed by this section." There the subject matter was dealt with comprehensively by detailing, among other things, the time, manner and limits (in amount) of such pay-

ments, and for the cessation thereof upon the death of such judge, or when attaining 70 years of age notwithstanding the term for which he was elected had not yet expired. It is not to be supposed that our organic law would descend into such particularities. [784] The failure or omission to use the phrase "until the end of the term for which he was elected" foreclosed any question as to whether the legal representatives, heirs or assigns of a Judge so retired, and whose demise occurred prior to the expiration of the term for which he was elected would be entitled to receive, either in a lump sum or in instalments, the amounts accruing after such demise "until the end of the term for which he was elected." It seems the omission of such phrase in the present instance was not the result of inadvertence. Moreover, the very section of the Constitution respondent is charged with having violated by reason of practicing law (Art. V, § 24) contains this further provision, ". . . but no judge's salary shall be diminished during his term of office." That language, without the familiar qualifying phrase "except as otherwise provided in this Constitution," or words of like import (with instances of which the Constitution fairly bristles), negates the idea that a judge retired for disability under § 27 *thereafter* has a live and subsisting "term of office," this because a contrary view would result in irreconcilable conflict between these two sections—the one prohibiting, and the other effecting, diminution of a judge's salary during his term of office.

We think that the language "until the end of his term of office" was not used in the sense that, paradoxically, a judge "so retired" shall remain in office notwithstanding his removal; on the contrary, it means so much of the period for which he had been elected or appointed as would have been served by him had § 27 not become applicable to his situation. To rule otherwise would be to say that upon being retired from the office of circuit judge respondent then became the occupant of a judgeship, but he was no longer the judge of any court—a judgeship without form, structure, duties, functions, and wholly devoid of judicial power or authority, and having the single incident of the right to receive, during a limited period, one-half the regular compensation formerly received by him as a circuit judge. It is apparent that such a person is not a judge, and hence not within the purview of Art. V, § 24 of the Constitution.

The ouster prayed must be, and it is, denied.

*Dalton, Hollingsworth, Hyde, Westhues,* JJ., and *Cave,* Special J., concur; *Eager* and *Storckman,* JJ., not sitting because not members of the court when cause was submitted.