MARION COUNTY v. THE FIRST SAVINGS BANK OF PALMYRA, Appellant.
—80 S. W. (2d) 861.

Division Two, March 5, 1935.

*Ben E. Hulse* for appellant.

676

*Walter G. Stillwell* and *Ben Ely* for respondent.

BOHLING, C.—This is an appeal from a judgment of the Marion County Circuit Court allowing the claim of Marion County, Missouri, against The First Savings Bank of Palmyra, Missouri, a Missouri banking corporation, in liquidation, as a preferred claim of $18,721.67.

The County Court of Marion County, proceeding under the provisions of Chapter 85, Article 9 (Secs. 12184-12198), Revised Statutes 1929, estimated the county revenues at $80,000 and, dividing the same into four parts, selected said savings bank as depositary for two parts (two-fourths) of the funds of Marion County, on May 8, 1931. Thereafter, on May 25, 1931, the surety bond of said depositary in the penal sum of $40,000 was approved by said court. Shortly thereafter, the surety company desired to cancel one-half of said bond. Upon said depositary not offering other security, the matter was taken up with the county court, and that court, on September 28, 1931, the county having a credit balance of $50,822.71 in said bank, entered its order amending the order of May 8, to the end that the contract with said bank be for one-fourth of the county funds, and increased the contract with the Hannibal National Bank (the other county depositary) from two-fourths to three-fourths of said fund, further ordering that the bond of the savings bank be fixed at $20,-000 and of the national bank at $40,000 (the same amount for the national as in the original order selecting the depositaries). At the same time the court ordered the county treasurer to adjust the county funds in accord with said amending order. On October 5, 1931, the surety bond of said savings bank in the penal sum of $20,000 was approved by the court, the county having to its credit in said bank the sum of $36,052.64. On February 1, 1932, the county's balance in said savings bank was $31,353.37 and the matter of excess credit over the principal amount of the bond was taken up with the bank, resulting in a contract of pledge of United States of America securities of the par value of $20,000 to the county in addition to the $20,000 bond, said action being approved by the county court order dated February 1, 1932. On August 22, 1932, the county court entered its order releasing $10,000 of the securities pledged on February 1, 1932; at which time the balance to the credit of the county was $35,375.10. On October 5, 1932, the county court entered its order canceling the remainder of the contract of February 1, 1932, with said bank, and released the remaining $10,000 in securities pledged as aforesaid. On said October 5, the balance due the county was $23,014.67. Thereafter the balance due the

county dropped, reaching the low figure of $16,462.66 on November 26, 1932; but again increased, standing at $38,721.67 on January 31, 1933. The board of directors of the bank voted to place the institution in the hands of the Commissioner of Finance and it closed its doors for the usual transaction of business on February 1, 1933. The county recovered from the bonding company $20,000. and this litigation is limited to the $18,721.67 overplus of the county's credit above the penal amount of the surety bond.

Chapter 85, Article 9, Sections 12184-12198, Revised Statutes 1929 (Mo. Stat. Ann., p. 6455 et seq.), governs the selection of county depositaries, and the decision in this case turns upon the construction to be placed on the provisions of said article with reference to the bond therein provided for. The appellant contends the relation between the bank and the county was that of creditor and debtor. Respondent contends the bank held the fund as trustee *ex maleficio*.

Preliminary to a discussion of said Article 9, and its application to the facts before us, we note the following from the adjudicated cases: The provisions of said article are mandatory and must be complied with in all respects (School Dist. v. Cameron Trust Co., 330 Mo. l. c. 1075 (1), 51 S. W. (2d) 1025); and before a bank may qualify as a lawful county depositary it must give the security prescribed by Section 12187 (Huntsville Trust Co. v. Noel, 321 Mo. l. c. 755, 12 S. W. (2d) 751.) The bond "must comply, and we think literally, with the requirements of the statute" (Boone County v. Cantley, 330 Mo. l. c. 916, 51 S. W. (2d) 56, stating: "A bank which has given a bond that does not comply with the provisions of Section 12187, Revised Statutes 1929, regardless of the action taken by the county court with respect to it, is not a county depositary either in law or in fact"). Public officers, custodians of public money or charged with the exercise of a duty in respect thereto, are agents of limited powers only (Huntsville Trust Co. v. Noel, 321 Mo. l. c. 757, 12 S. W. (2d) 751; State ex rel. v. Page Bank, 322 Mo. l. c. 36, 14 S. W. (2d) 597; Harrison Township v. Bank, 329 Mo. l. c. 972, 46 S. W. (2d) 165; White v. Greenlee, 330 Mo. l. c. 140, 142, 49 S. W. (2d) 132), holding public funds as trust property, without authority to pass title thereto other than as provided by law (School Dist. v. Cameron Trust Co., 330 Mo. l. c. 1076 (3), 51 S. W. (2d) 1025; Clearmont School Dist. v. Jackson Bank (Mo. App.), 37 S. W. (2d) 1006). All dealing with public officers and funds are charged with knowledge of the statutory provisions relating to county depositaries. [School District v. Cameron Trust Co., 330 Mo. l. c. 1076, 51 S. W. (2d) 1025; State ex rel. v. Page Bank, 322 Mo. l. c. 36, 14 S. W. (2d) 597; City of Macon v. Farmers' Trust Co. (Mo. App.), 21 S. W. (2d) 1. c. 644 (3).]

The original County Depositary Act was passed in 1889 (Laws 1889, pp. 81-83). [Huntsville Trust Co. v. Noel, 321 Mo.

l. c. 756, 12 S. W. (2d) 751.] That act contemplated lump sum bids by banking institutions for county · funds, the bid to be accompanied by a certified check, or currency, for the amount of money offered in said bid to be delivered to the county treasurer in the event the bank was selected as depositary. Section 4 of that act (corresponding with now Sec. 12187) provided for the giving of a bond by the successful bidder, stating: "The penalty of said bond to be *at least double* the revenue of said county for any one year, and conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary, and for the payment upon presentation of all checks drawn upon said depositary by the county treasurer of said county, whenever any funds shall be in said depositary applicable to the payment of said check." In 1891 (Laws 1891, p. 103, Sec. 3213, corresponding with now Sec. 12185) the theory of lump sum bids was changed to bids stating the rate of interest the banking institution offered to pay on the funds of the county, and required the bid to be accompanied by a check for not less than one-half of one per centum · of the county revenue for the preceding year as a guaranty of good faith and for the giving of the bond required. The law still contemplated the selection of one depositary, and Section 3215 (corresponding with now Sec. 12187) provided for "the penalty of the bond to be *not less than the total annual revenue* of said county for the years for which said bond is given, and conditioned (as in the Act of 1889) . . . for the payment, upon presentation of all checks drawn upon said depositary by . the county treasurer of said county whenever any funds shall be in said depositary." The amount of the penalty of the bond was changed from at least double the revenue of said county for any one year to an amount not less than the total annual revenue of said county for the years for which the bond was given. The terms of the statute show the General Assembly recognized the fact that county accounts were active; that the deposits would be subject to withdrawals; and that a penalty of not less than the total annual revenue of the county for the years for which the bond was given (as well as "at least double the revenue of said county for any one year" as in the original act), when read in connection with the condition of the bond for the payment of all proper checks drawn upon said depositary, would at least equal, if not exceed, at all times the total county revenue received and deposited during the life of the bond. In 1899 (Laws 1899, p. 135) Sections 3216a and 3216b (corresponding with now Secs. 12189 and 12190, respectively) were added. Section 3216a, in so far as here material, authorized (as does now Sec. 12189) the county court, under given emergencies to deposit the county funds with one or more of the banking institutions "in the county or adjoining counties," and required depositaries thus selected, among other things, to "execute a bond in manner and

form as prescribed in Section 3215, with all the conditions therein mentioned, the penalty of such bond or bonds to be not less than the total amount of the county funds to be deposited with such bank or banking concern." We perceive, for the protection of the county funds, no reason for a distinction in the theory for ascertaining the minimum penalty of the bond given under said Section 3216a (now Sec. 12189) where the depositary is not selected in the usual manner, and a bond given under Section 3215 (R. S. 1889, as amended by Laws 1891, p. 104, supra), where the depositary is selected in the usual manner, and, within the contemplation of the General Assembly, we think there existed no distinction. Giving consideration to these provisions, the General Assembly must have intended to, and we think did, provide for the protection of the county funds by a bond with a penalty in an amount equal to the possible total deposits of county revenue (under then Sec. 3215), for the years for which the bond is given, and (under then Sec. 3216a) for such time as the bond, under the emergency existing, would be in force and effect. In 1909 (Laws 1909, pp. 385-390), under the title, "An act . . . providing for the selection of county depositaries by county courts, by the letting of county moneys in portions to banks and banking institutions, providing for the taking of security therefor, for the payment of checks, and defining the duties of county treasurers in relation thereto," . . . the law was changed so as to provide for dividing the county funds into not less than two nor more than ten equal parts for the purpose of the letting; and banking institutions thereafter qualified as depositaries for one or more parts, rather than for the whole, of the county funds. That act constitutes now Article 9, Chapter 85, except for the changes occurring in 1915 (Laws 1915, p. 249). The letting of the funds in parts necessitated changes in the provisions relating to the bond. We quote the applicable portion of now Section 12187: "The penalty of each depositary's bond to be not less than such proportion of the total annual revenue of said county for the years for which such bond is given as the sum of the part or parts of the funds awarded to such bidder selected respectively bears to the whole number of said parts the amount of the bond to be fixed by the court, and said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary and for the payment upon presentation of all checks drawn upon said depositary by the proper officers of said county or any township whenever any funds shall be in said depositary." (The Act of 1915 did not materially affect the Act of 1909 as to the issue here involved.) The factor controlling the amount of the penalty of the bond remained (as established in 1891) "the total annual revenue of said county for the years for which such bond is given." If the successful bid be for all the parts of the county funds, then the penalty of the bond

should be not less than such "total annual revenue" to comply with the letter, as well as the spirit, of the statute; and if for but one of four parts, then the penalty of the bond should be not less than one-fourth of such "total annual revenue." The county court is without authority to fix any less amount as the penalty of the bond; but may determine upon a greater sum therefor. Subject to such limitations, the county court, if it deems it necessary for the protection of the county, may require "any depositary to execute a new bond." [Sec. 12197, R. S. 1929; Laws 1889, p. 83, sec. 10.] Considering, then, the statutory provisions with reference to the amount of the penalty of the bond and the condition of the bond with reference to the payment of checks drawn against the deposits whenever any funds shall be in any such depositary (especially, in the light of the historical development of the legislation), it follows that the execution and approval of a bond in an amount less than the proportion of the total annual revenue of the county for the years for which the bond is given as the sum of the part or parts of the funds awarded to such bidder bears to the whole number of said parts fails to comply with the statutory requirements, and, if force and effect be given to such requirements, fails to qualify such depositary for deposits of county revenues in excess of the amount of the penalty of the bond.

In the instant case the original penalty of the depositary's bond was reduced from $40,000 to $20,000 as of October 5, 1932. Thereafter, the deposits in said depositary increased from $16,462.66 between November 26, 1932, and January 31, 1933, to $38,721.67. The county officials were without lawful authority to deposit and said depositary, as such, was without lawful authority to receive the $18,721.67 excess of deposits over the penal amount of the bond. Under such circumstances the title to said $18,721.67 did not pass, but remained impressed with the trust imposed upon it while in the lawful possession of the official rightfully entitled to it, and said depositary held the same as trustee *ex maleficio*. [School Dist. v. Cameron Trust Co., 330 Mo. l. c. 1077, 51 S. W. (2d) 1025; State ex rel. v. Page Bank, 322 Mo. l. c. 35, 14 S. W. (2d) 599; Harrison Township v. Bank, 329 Mo. l. c. 971, 46 S. W. (2d) 165; Clearmont School Dist. v. Jackson Bank (Mo. App.), 37 S. W. (2d) l. c. 1006; City of Macon v. Farmers' Trust Co. (Mo. App.), 21 S. W. (2d) l. c. 644 (3); Special Road Dist. v. Cantley, 223 Mo. App. l. c. 93, 8 S. W. (2d) 944. See, also, Jarvis v. Hammons, 32 Ariz. 444, 259 Pac. 886; Powell v. Tunica County, 107 Miss. 410, 65 So. 499, Ann. Cas. 1916B, 1262; City of Centralia v. United States Natl. Bank, 221 Fed. 755.]

Appellant contends the county court waived any right of the *cestui que trust* to priority of payment. Assuming (but not conceding under the facts of the instant case) that the savings bank, by reason of the approval of the $20,000 bond, became a duly quali-

fied depositary for certain funds of said county, its status as to deposits in excess of the amount of the penalty of its bond is as though it had not qualified as depositary for any of the funds of said county. Hence, there was no waiver of any rights of the *cestui que trust* to such excess of deposits. We have examined the authorities cited by appellant, but hold, under the facts here presented, this issue is determined by the cases cited supra. · [See especially State ex rel. v. Page Bank, 322 Mo. l. c. 35, 36, 14 S. W. (2d) 597.]

The instant case is distinguishable from the case of Ralls County v. Commissioner of Finance, 334 Mo. 167, 66 S. W. (2d) 115, in that in the Ralls County case the depositary lawfully received the funds as such and the title thereupon passed; whereas, under the facts in the instant case, the savings bank did not lawfully receive any of the $18,721.67 as county depositary, and no title thereto vested in the bank.

Under this ruling, it is unnecessary to pass upon the effect of the various acts of the county court in reducing the amount of the penalty of the original bond, or reducing the security pledged .for the protection of the funds.

The judgment of the trial court should be and is affirmed. *Cooley* and *Westhues, CC.,* **concur.**

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.