W. A. WHITE, Treasurer of Pike County, and PIKE COUNTY, Appellants, v. C. A. GREENLEE, Special Deputy Commissioner of Finance, D. R. HARRISON, Commissioner of Finance, and EOLIA BANK, a Corporation.—85 S. W. (2d) 112.

Division One, July 30, 1935.

*Davis Benning,* W. C. *Reynolds* and *Hostetter & Haley* for appellants.

*Drake  Watson* for  respondents.

BRADLEY, C.—This cause is founded on a claim for preference. The Eolia Bank, Pike County, had been selected as the depository of a portion of the county funds. This bank failed and was placed in charge of the Commissioner of Finance for liquidation on September 15, 1931. At the time the bank failed, Pike County had on deposit therein $6360.79. The county treasurer and the county, as claimants, filed for preference. The claim was allowed by the circuit court as a common claim, but preference was denied, and claimants appealed. The appeal was to the St. Louis Court of Appeals, but that court transferred the cause here for lack of jurisdiction. [Art. 6, Sec. 12, Constitution; State ex rel. v. Adkins, 221 Mo. 112, 119 S. W. 1091; Wright County ex rel. v. Farmers' & Merchants' Bank (Mo.), 30 S. W. (2d) 32.]

For convenience, we will refer to claimants as plaintiffs and to the Commissioner of Finance, the deputy and the bank as defendants. Plaintiffs base the claim for preference on two propositions, viz.: (1) That the Eolia Bank was not a legally selected depository and that, therefore, it held the fund in question as trustee *ex maleficio;* and (2) that the depository bond was not legally executed by the bank, and that, therefore, the bond was not binding on the bank. We shall dispose of these contentions in the order stated.

The proposition that the bank was not a legally selected depository is based on the contention that the notice that bids would be received from banks of the county for the county funds was not published as required by Section 12184, Revised Statutes 1929. This section, so far as pertinent here, is as follows: "It shall be the duty of the county court of each county in this State, at the May Term thereof, in the year 1909, and every two years thereafter, to receive proposals from banking corporations, associations or individual bankers in such county as may desire to be selected as the depositaries of the funds of said county. For the purpose of letting such funds such county court shall, by order of record, divide said funds into not less than two nor more than ten equal parts, and the bids herein provided for may be for one or more of such parts. Notice that such bids will be received shall be published by the clerk of said court twenty days before the commencement of said term in some newspaper published in said county, and if no newspaper be published therein, then such notice shall be published at the door of the courthouse of said county. . . ."

April 9, 1931, the county court made an order of record, which, in part, is as follows: "It is ordered by the court that the county funds be and they are hereby divided into ten equal parts for the purpose of receiving bids of depositaries, and it is further ordered, that the clerk of this court cause notice to be published, twenty days before the first day of May, 1931, term of this court, in the Louisiana Press Journal, a weekly newspaper published in Pike County, Missouri, that sealed bids will be received for one or more parts of the county funds by the clerk of this court, from the date of publication of said notice until noon of the first day of the said May Term, 1931, of the county court of Pike County, Missouri, from any banking corporation, association or individual banker desiring to be selected as a depository for the county funds from the 6th day of May, 1931, until the 6th day of May, 1933."

A copy of the order of April 9th was published by the county clerk in the Louisiana Press Journal on April 10th and 17th, and plaintiffs say that such publication was not a compliance with the statute. The May Term of the county court commenced on Monday, May 4, 1931, and the first publication was on April 10th. The notice published on April 10th was twenty days *before* May 4th, and defendants say that all that is required as to publication of notice by Section 12184 is that the notice be published twenty days *before* the first day of the term, and that it is not required to publish the notice *for* twenty days, and in this connection, defendants say that the second publication of April 17th was superfluous. A proper publication of notice for bids was a prerequisite to the authority of the county court to designate the Eolia Bank as a depository for county funds, and unless such publication of notice was given as required by Section 12184, then the bank did hold the fund in question as trustee *ex maleficio* and plaintiffs would be entitled to a preference. [In re Cameron Trust Co., 330 Mo. 1070, 51 S. W. (2d) 1025.]

What is now Section 12184, Revised Statutes 1929, was first enacted in 1889, Laws 1889, page 81, and as to the manner of publishing the notice, there has been no change. We do not find that this section on the point here raised has been before an appellate court of this State. Plaintiffs, appellants here, to support their contention as to notice, rely on Stine v. Wilkson, 10 Mo. 75, l. c. 96. That case concerns the foreclosure of a deed of trust. In the event of default, the trustee was authorized by the deed of trust to sell the land and premises at public auction to the highest bidder at the courthouse, "first having given twenty days' previous notice of the time and place and terms of sale and property to be sold, by advertisement in some newspaper printed in the city of St. Louis." The transaction in the Stine case was long prior to what is now

Sections 3076 and 3077, Revised Statutes 1929. The latter section was amended in 1931. [Laws 1931, p. 174.] These sections were first enacted in 1885. [Laws 1885, p. 209.] In the Stine case, notice of foreclosure was published March 11, 1840, in the Evening Gazette, and thereafter was published in the Atlas on March 14th, 21st and 28th. Publication was held bad because of the change of papers. The foreclosure sale was had April 1, 1840, and it was contended that the publication of notice on March 11th in the Evening Gazette was "twenty days previous notice," and met the requirement of the deed of trust as to notice. This contention was disallowed and, in ruling the point, the court said: "If one publication of the notice, made at least twenty days prior to the day fixed for the sale was sufficient, what would forbid the giving of that notice thirty, sixty or ninety days before the day of sale? and yet such a notice would be unquestionably bad."

The language of Section 12184 that "notice that such bids will be received shall be published by the clerk of said court twenty days before the commencement of said term in some newspaper published in said county," is somewhat similar to the language on notice in the deed of trust in the Stine case, and that case seems to support plaintiffs' construction of Section 12184. But there is much more recent authority than the Stine case. Southworth v. Mayor of Glasgow, 232 Mo. 108, 132 S. W. 1168, was to restrain by injunction the issuance and registration of $30,000 of municipal bonds on the alleged ground, among others, that the election at which the bonds were voted was void because notice of the election had not been properly given. Section 6276, Revised Statutes 1899, now Section 7301, Revised Statutes 1929, under which the notice was given, provided that for the purpose of testing the sense of the qualified voters on the proposition to become indebted by issuing bonds, the legislative body of the city should order an election to be held, "of which (election) not less than fifteen days' previous notice shall be given by publication in some newspaper published in such city or town." October 18, 1909, was the date fixed for the election. Notice of the election was published September 30th in the Glasgow Missourian, a newspaper published in Glasgow, and was not thereafter published. Plaintiffs claimed that the language of Section 6276, Revised Statutes 1899, required that the notice be published in each issue of the paper from the date of the first publication to the date of the election. On the other hand, defendants contended that the notice published September 30th, being fifteen days before the election, was a compliance with the statute. The Southworth case, opinion by Judge GRAVES, reviews a number of cases in this and other jurisdictions on similar questions and held that publication of notice of the election on September 30th was sufficient. Among the cases discussed was the Stine case, and another

was Washington v. Bassett, 15 R. I. 563, which concerned the publication of notice of foreclosure of a mortgage. The Rhode Island Supreme Court followed the Stine case and held the publication of notice bad. In the Southworth case, it is stated that the Rhode Island case "is the strongest and practically the only case which we have found upholding the Stine case," and further: "We think, however, that the weight of authority, so far as the construction given to these words 'fifteen days' notice' or 'twenty days' notice,' is against the holding of the Stine case, as well as that decided by the Rhode Island court. Much language used in our own later cases would so indicate, although in precise terms the exact point is not made by reason of the facts of the several cases."

As stated, supra, Judge GRAVES reviewed a number of cases in the Southworth case, and there would be no useful purpose served by repetition here. The ruling in the Southworth case on the principle or point here involved was followed in Hoffman v. Bigham, 324 Mo. 516, l. c. 525, 24 S. W. (2d) 125. Section 12184, Revised Statutes 1929, is somewhat vague as to *when*, with reference to the commencement of the term, the publication of the notice therein provided for, if to be published in a newspaper, should be placed in the paper. The statute says "twenty days *before* the commencement of said term." It might be suggested that six months or a year or longer, would be "twenty days *before* the commencement of said term," and such illustration was mentioned in the Stine case as appears, supra, and it was stated that "such a notice would be unquestionably bad." And we agree that such a notice would be bad. In construing a statute, its object and purpose must be kept in mind and such construction placed upon it as will, if possible, effect its purpose. [59 C. J. 961; Kerens v. St. Louis Union Trust Co., 283 Mo. 601, 223 S. W. 645, and other Missouri cases cited in note 41, 59 C. J. 962.]

The object and purpose of the notice provided for in Section 12184 is to inform the bankers of the county that depositories will be selected at the May Term of court of whatever year it may be, and the statute requires that the notice be published "twenty days before the commencement" of that term, therefore, common reason would suggest that the notice should be published at a time in such proximity to the May Term of court that the twenty days would lapse a day or a few days, according to the practical situation, before the commencement of the term. Such is, evidently, the meaning of Section 12184. We rule that the notice published in the Louisiana Press Journal on April 10, 1931, was a compliance with the statute as to notice.

■ We come now to the proposition that the depository bond was not legally executed by the bank. The name, *The Eolia Bank*

was placed on the bond in typewriting, and it does not appear, on the bond, who typed the name of the bank, and it was not disclosed at the trial who placed the name of the bank thereon. In addition to the name of the bank being on the bond there were the names of 10 individuals, all of whom signed with pen and ink, and among whom was J. Q. Thurman, vice president of the bank, and W. C. McCue, secretary. The last paragraph of the bond and the arrangement of signatures appear in the record as follows:

"In Witness Whereof, the principal herein has caused this instrument to be executed by its president and attested by its secretary, and the sureties hereto have hereunto set their hands, the day and year first above written.

| | |
|---|---|
| "J. Q. Thurman | The Eolia Bank |
| "Edward Beall | E. R. Elsbury. |
| "S. D. Reynolds | E. P. Achor |
| "L. T. Flemming | W. C. McCue |
| "Attest: | B. M. Gooch |
| "W. C. McCue | W. T. Jensen |
| "Secretary." | C. D. Lovell |

W. C. McCue was a witness and he testified that he "was secretary of the Eolia Bank at the time the bond was executed." He also testified that D. B. Bibb "was president of the bank at the time this bond was made," and that "the signature, W. C. McCue, secretary, appearing on this original bond is my signature. I think I signed that on behalf of the bank. I also signed as one of the sureties," and as appears in an additional abstract, McCue testified: "Q. Your signature down here was as secretary of the bank? A. Yes, sir." It is not shown in the record that the board of directors of the Eolia Bank authorized by resolution the execution of the bond, but absent such showing, right action will be presumed. [State ex inf. v. Heffernan, 243 Mo. 442, 148 S. W. 90; 22 C. J. 107.] However, it is not necessary to determine whether the bond was binding on the bank. Section 12187, Revised Statutes 1929, provides that "within ten days after the selection of depositaries, it shall be the duty of each successful bidder to execute a bond payable to the county to be approved by the county court and filed in the office of the clerk thereof with not less than five solvent sureties," and in such sum as prescribed in the statute, "and said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary," etc. No point is made on the bond except the signature of the bank. The sureties on this bond were bound, regardless of the irregularity complained of. [Farmers & Traders Bank v. Harrison, 321 Mo. 815, 12 S. W. (2d) 755; Clark County Savings Bank v. Farmers' Trust Co. (Mo. App.), 24 S. W. (2d) 1065.] The purpose of the bond was

to secure the county money, and the sureties being bound, such purpose was attained, and the irregularity in the bank's signing the bond did not destroy the bank's status as a depository.

The judgment below denying a preference should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.