SCHOOL CONSOLIDATED DISTRICT No. 10 OF ARBYRD, a Corporation, v. W. J. WILSON, G. W. KRONE, A. S. McDANIEL, ARTIE M. WILSON and FRED H. WALLACE, Administrators of the Estate of THOMAS G. WILSON, H. S. JONES, J. F. DROKE and H. J. HARDIN, Appellants.—135 S. W. (2d) 349.

Division Two, December 14, 1939.

*Finch & Finch, John W. Noble, Alletha B. Noble* and *McKay & McKay* for appellants.

600

*Langdon R. Jones* for respondent.

BOHLING, C.—This is an appeal by the sureties on the depositary bond of The Citizens Bank of Senath, Senath, Missouri, to the School Consolidated District No. 10 of Arbyrd from a judgment for the penalty of the bond, $15,000, to be satisfied upon the payment of $7,856.45, balance of principal, plus interest, due after crediting forty per centum preferential payments received from the Bank's estate. They question the effectiveness of the obligation, contending plaintiff should have been cast nisi on demurrer.

The Citizens Bank of Senath closed its doors January 28, 1933, with $9,678.38 of respondent's funds in its possession and credited to respondent's account. The parties are agreed said Bank was not the legally constituted depositary of the funds of plaintiff School District but held the same as trust funds payable as a preferred claim, and that the assets are insufficient to discharge the preferred claims in full.

Section 9362, Revised Statutes 1929 (Mo. Stat. Ann., p. 7211), provides that the board of education of consolidated school districts "shall select depositaries for the funds of such school district in the same manner as is provided by law for the selection of county depositaries . . ." Article 9 of Chapter 85 (Secs. 12184-12198), Revised Statutes 1929 (Mo. Stat. Ann., pp. 6455-6465), relates to county funds and the selection of the depositaries thereof. Briefly, said article, among other things, provides: The county court shall select depositaries every two years at the May Term; shall divide the county funds into not less than two nor more than ten equal parts for that purpose; cause due notice to be published (Sec. 12184); receive sealed bids, accompanied by certified checks, etc. (Sec. 12185); publicly open said bids, enter each upon its records and select the depositaries or depositary (Sec. 12186) and approve the bond required to be filed within ten days by the selected depositaries or depositary (Sec. 12187).

The records of the School District recite that, under date of August 2, 1927, the Citizens Bank of Senath was selected as depositary and required to furnish surety bond for $4000; that, under date of April 11, 1929, action on a suggestion to change the depositary was deferred; that, under date of April 23, 1929, the "question" of changing the depositary, upon vote, was lost; and that, under date of

January 21, 1931, a motion to change the depositary again failed to carry. The record before us does not disclose any compliance or attempt to comply with the statutory requirements for the selection of a lawfully constituted depositary. However, sometime in January, 1931, the treasurer of the School District received from the cashier of the Citizens Bank of Senath a bond, reading:

"Know all men by these presents, That, we the Citizens Bank of Senath, Missouri, as principal and G. W. Krone, Thos. G. Wilson, H. S. Jones, A. S. McDaniel, W. J. Wilson, H. J. Hardin and J. F. Droke as sureties, are held and firmly bound unto the School Consolidated District No. 10 of Arbyrd, Missouri, in the sum of fifteen thousand dollars ($15,000.00), to the payment of which, well and truly to be made, we bind ourselves, our heirs, legal representatives and assigns firmly by these presents.

"The condition of the above bond is that if the above bounden Citizens Bank of Senath, Missouri, shall faithfully perform all the duties and obligations devolving by law upon it as the Depositary of funds of the said School Consolidated District No. 10 of Arbyrd, Missouri, and shall pay upon presentation all checks drawn upon it by the Treasurer of said District when ever any funds shall be in said Depositary applicable to the payment of said checks and shall faithfully keep and account for, according to law, all funds of said District, including funds belonging to said District, then this obligation to be void; otherwise to remain in full force and virtue.

"[Here follow the execution clause, dated January 27, 1931, and the signatures of the Citizens Bank of Senath and the sureties.]"

We group certain of the sureties' points for discussion.

I. The sureties contend that since the Citizens Bank of Senath was not a legal depositary for the funds of the School District and never obtained title to any funds placed in its custody by said District, there was no consideration for the bond sued on and since the School District filed, had allowed and accepted payments on its claim as a preferred creditor, it made an election of remedies and may not prevail in this action.

The contention proceeds upon the theory: 1st. The ordinary relation existing between a depositor and a bank is that of creditor and debtor. [Henry County v. Salmon (Banc), 201 Mo. 136, 163, 100 S. W. 19, 27; Cole County v. Central Missouri Trust Co. (Banc), 302 Mo. 222, 235, 257 S. W. 774, 777 [2]; Ralls County v. Commissioner of Finance, 334 Mo. 167, 170[1], 66 S. W. (2d) 115, 116[2].] 2nd. In the instant case it is conceded the title to the School District's funds did not pass to the Bank but remained in the School District and said funds were held by the Bank as trustee for the District as *cestui que trust*. [Re Cameron Trust Co., 330 Mo. 1070, 1077[6] 51 S. W. (2d) 1025, 1026[3]; Marion County v. First Savings Bank, 336 Mo. 675, 678[2], 80 S. W. (2d) 861, 863[4]; School District

No. 61 v. Railey & Bro. Banking Co., 227 Mo. App. 543, 545, 55 S. W. (2d) 699, 700[1].] Hence, there was no consideration to support the obligation of the sureties on the bond, and the School District's action with respect to a preferred claim against the Bank's estate is inconsistent with its suit on the bond against the sureties.

The sureties quote certain preliminary observations made *arguendo* in Marion County v. First Savings Bank, 336 Mo. 675, 678[1], 80 S. W. (2d) 861, 863[1-3], and stress the holding in Re Cameron Trust Co., 330 Mo. 1070, 1075[2], 51 S. W. (2d) 1025, 1026[2]: "The advertising for bids is a prerequisite to the authority of the school board to designate any bank or trust company a depositary of the funds of the district. *Such a contract, made without advertising for bids, is utterly void, and all parties thereto are parties to an illegal contract, and such a contract could not be entered* into in good faith. . . . So, in this case the school district has no authority, whatever, by acquiesence, common consent, or by an express contract, to continue the old contract beyond the period fixed by the statute. The giving of a bond in October, 1929, has no significance in this case. In the first place the trust company was not the legal depositary, secondly, the bond was not such as the statute required. The first contention of respondent that the trust company was the legal depositary is therefore without merit." [Italics ours.]

On the other hand we have said ". . . a rigid compliance with all the *minutiae* of the statute is not indispensable to the validity of a depositary bond." [Henry County v. Salmon (Banc), 201 Mo. 136, 152, 100 S. W. 21, 23. Consult Re Peoples Bank, 344 Mo. 611, 127 S. W. (2d) 669, 673[3-11] citing cases, and commenting on the Re Cameron Trust Co. case, supra, at p. 671[2].]

The Henry County case, supra, was an action on a county depositary bond, which was not timely approved of record. Thereafter, a *nunc pro tunc* order of approval was entered. The court held the *nunc pro tunc* entry proper, and, consequently, that the depositary was legally selected, qualified and acting as such. But, the court went farther, saying: "By signing and delivering the bond in suit the sureties intended Salmon & Salmon should be county depositary. That act enabled them to get hold of the county moneys. Under such conditions it becomes immaterial whether there was any formal order designating Salmon & Salmon County depositary. . . . The engagement of these sureties was to stand sponsor for Salmon & Salmon—to answer for their default. Now, that default could arise as well on an irregular, as regular, designation of them as depositary—whether they were a depositary *de facto*, or *de jure*. Moreover, the bond was for the benefit of the public (not of the sureties); and the welfare of the public is the touchstone we must seek . . . ."

In School District v. Security Bank, 325 Mo. 1, 26 S. W. (2d) 785, a suit on a depositary's bond, one of the defenses was that the

bank had received the school district's funds under circumstances creating a trust relationship and the school district was, therefore, a preferred creditor. In that case the bond was not executed within the statutory period. Speaking to the issue that there was no consideration for the bond the court considered a depositary bond one of the requirements of the contract of a depositary of school funds; that the contract became complete and binding upon the school district only upon the execution and delivery of the bond; and that no new consideration was necessary at the time the bond was executed (l. c. 14(IV), 790[3, 4], respectively). This would appear to be sufficient to sustain the obligations of said sureties upon said depositary bond. But, with respect to the failure of the depositary to timely execute and deliver its bond, the court (l. c. 17 and 792[7], respectively), following the quoted remarks from the Henry County case, said: "Whether the Legislature intended to invalidate a bond given under such circumstances, that is, whether the statutory provisions referred to are mandatory or merely directory, we need not decide. Where, as here, faith and credit have been given to a depositary bond and it has performed the function of a statutory bond, the sureties on such bond cannot escape liability upon the ground that their principal was not duly selected as a depositary, nor upon the ground that such bond was not executed and delivered within the time prescribed by the statute. . . . By signing and delivering the bond, the sureties, including appellants, intended that the bank should become such a depositary. That act enabled the bank to get hold of one-eighth of plaintiff's funds. Under such circumstances, it becomes immaterial whether the bank was selected as such a depositary exactly as prescribed by the statute, or whether the bond was executed within the time prescribed by the statute. The engagement of the sureties on the bond in suit was to stand sponsor for the bank—to answer for its default. That default could arise whether the bank was a depositary *de facto*, or *de jure*. That default has arisen, and appellants, as sureties on the bond, must answer therefor."

State v. Pederson, 135 Wis. 31, 37, 114 N. W. 828, 830, an action on a surety bond covering state funds, advances the following reasoning: "The state is not ordinarily estopped by acts of misfeasance on the part of its officers, nor does it contract with the sureties on an official bond given to it that other public officers shall perform their public duties faithfully. Sureties upon such bonds are presumed to know this principle, and to consent to be bound by it. The principles governing the liabilities of sureties upon private bonds and contracts have no application so far as they conflict with this."

Consult, also: Wright County v. Farmers & Mer. Bank. (Mo.), 30 S. W. (2d) 32, 34[8, 9]; State ex rel. v. McKay, 325 Mo. 1075, 1092, 1096, 30 S. W. (2d) 83, 90[5], 92[11]; Mitchell v. Bank of Ava,

333 Mo. 960, 966[2], 65 S. W. (2d) 99, 102[2]; Annotations in 18 A. L. R. 274 (III), and 77 A. L. R. 1479.

In Mitchell v. Bank of Ava, supra, the bank was selected as a depositary on May 10, 1929, and the bond was not filed until August 7, 1929. We considered (l. c. 966[3] and 102[3], respectively) that prior to the filing of the bond the depositary had custody of the county funds as trust funds but upon the depositary filing the statutory bond said funds were transformed into general deposits and the relation of trustee and *cestui que trust* terminated and that of debtor and creditor arose.

The School District argues the observations quoted supra dispose of the sureties' contentions; that if the Bank was a *de facto* depositary and the sureties may not question its status as such, then there was a sufficient consideration for the obligation of the sureties and the asserted inconsistency between the School District's claim for preference and receipt of payments thereunder and the instant action disappears. But, without questioning the results reached in the cases cited or the applicability of the quoted observations in proper instances, do not the quoted remarks beg the issue in a case wherein the public has elected to repudiate the *de facto* depositary status, has participated in the distribution of preferred payments and the litigants are agreed that a debtor-creditor relation never did but the relation of trustee and *cestui que trust* did exist with respect to the public funds received by the surety's principal? In these circumstances should not a surety's obligation, even on a bond securing the deposit of public funds, pivot, as do the obligations of other parties to a contract, on written undertaking? And should courts, simply because some, not necessarily all, public officials misconstrue the obligations a surety assumes, penalize the surety and extend his undertaking to embrace liabilities not within the written obligation? As the writer views the issue it pierces beyond the bond. The surety does not question the status of his principal as depositary *de jure* or *de facto*. He contends the condition breathing life into his obligation to make good the default of his principal as depositary *de jure* or *de facto* stands confessed and adjudged as never having come into existence by reason of the School District's action treating his principal, not as a depositary *de jure* or *de facto* but, as a trustee of its funds. We perceive no reason why a surety may not limit his obligation to those public funds received by a depositary under circumstances causing the title to pass from the public to the depositary. The term "depositary *de facto*" contemplates the depositary's acquiring title. The relation of trustee and *cestui que trust* is not that of creditor and debtor or depositary and depositor in the law of banking. Banks exist through deposits. They would wither and perish of dry rot without deposits. The creditor-debtor relation between a bank and an ordinary depositor is but one of several creditor-debtor relations; and

general depositors are given priority of payment over other general creditors of an insolvent bank in a number of states. Equality is equity and creditors having equal rights should share equally in an insolvent's assets. As between creditors some specific recognized superior right or equity over others should be established to entitle one to preferential payment. This is not the situation in the instant case. Here, the School District did not assert a superior creditor's right to obtain priority but merely sought the recovery of its own property; that is, funds to which it held title and to which the Bank never acquired title but held only in trust for the School District. Properly speaking, the School District had no claim as a creditor against the general assets of the Bank, its funds never having become assets of the Bank; and the creditors of the Bank had no right to appropriate funds held in trust by the Bank for the School District to the satisfaction of their debts. Under such circumstances it would appear that the necessary consideration to support the statutory depositary bond would fail; and the sureties' argument that to permit recovery in such circumstances would encourage laxity in the discharge of the involved statutory duties and place a premium on negligence and, possibly, dishonesty is not devoid of merit. Upon insolvency the Bank's interest in the distribution of its assets ceases. Not only the public, but some of the officials charged with duties in respect to public funds, and the sureties on a depositary's bond become the beneficiaries of a nonobservance of sufficient formalities to constitute the Bank a legal statutory depositary upon its insolvency and the allowance of the public's claim as preferred on the theory of a trust relation. All this works to the detriment of the general depositors, the innocent and helpless losers, who have had no voice in the transaction but whose funds theretofore have maintained the depositary as a going concern.

However, we are of opinion the foregoing remarks will not avail the sureties on the instant bond. Section 12187, Revised Statutes 1929 (Mo. Stat. Ann., p. 6459), provides "said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary and for the payment upon presentation of all checks drawn upon said depositary by the proper officers . . . whenever any funds shall be in said depositary, . . . and that all said funds shall be faithfully kept and accounted for according to law. . . ." The words "said funds" unquestionably refer to funds on deposit, i. e., funds creating the legal relation of debtor and creditor. The covenants of the instant bond are not restricted to the quoted statutory conditions. They embrace the condition that the principal "shall faithfully keep and account for, according to law, all funds of said District, including funds belonging to said District." Funds of the School District in the custody of the Citizens Bank of Senath as trustee were "funds

of said District'' and were also within the phrase ''including funds of said District.'' So, even though the bond did not impose the statutory obligation, the sureties nevertheless assumed a common law obligation to make good the default of their principal which occurred in the instant case; and the action of the School District in securing a preference is not inconsistent with the instant action against the sureties. [Consult Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468; United States F. & G. Co. v. State, 81 Kan. 660, 106 Pac. 1040, 26 L. R. A. (N. S.), 865, 868-871; Barnes v. Webster (Banc), 16 Mo. 258, 265(2); State ex rel. v. O'Gorman (Banc), 75 Mo. 370, 378.]

II. Appellants say if the Bank, the principal, were not bound, they, the sureties, were not bound; and that the Bank was not bound because (a) the Bank was not a legal entity when the bond was signed, and (b), assuming the Bank to be a legal entity, the record fails to disclose any authority granted by its board of directors by resolution to sign the bond sued upon.

a. The Citizens Bank of Senath was incorporated for a period of twenty-five years. It was organized in 1904. The parties concede its charter expired in 1929 and was not extended. The bond was executed January 27, 1931. The sureties cite such cases as Bradley v. Reppell (Banc), 133 Mo. 545, 552, 32 S. W. 645, 646, 34 S. W. 841, 54 Am. St. Rep. 685, 687; Gray v. School District, 224 Mo. App. 905, 910, 28 S. W. (2d) 683, 685[2]. The observations in said opinions relied upon by the sureties do not pass off on an issue of estoppel by a party's own act or that of those under whom he claims or with whom he is in privity of contract. [Consult Hasenritter v. Kirchhoffer (Banc), 79 Mo. 239, 242, with respect to ''privies.''] For instance: The ruling in the Bradley case is that upon the expiration of the charter of a corporation by the lapse of time, the corporation ceases to exist and may not legally function as a corporate entity, and that persons, not estopped, may establish such fact. In the instant case we have a pseudo corporation, asserting its corporate existence, exercising corporate powers and executing a bond, as a corporation, with the sureties (its directors and officers) joining therein, and plaintiff School District and said sureties dealing with said corporation as if with a corporate entity. In such circumstances the parties to the agreement are estopped to deny corporate existence as of the date of the execution of the bond; and the sureties will not be heard on their plea *nul tiel corporation*. [St. Louis v. Shields, 62 Mo. 247, 251; Missouri Land Co. v. Kansas City S. B. Railroad Co., 161 Mo. 595, 604, 61 S. W. 847, 849; 8 Fletcher, Corporations (1931 Ed.), sec. 3963; 13 Am. Jur., p. 206, sec. 63.] In St. Louis Gas Light Co. v. St. Louis, 11 Mo. App. 55, 64(3), affirmed in 84 Mo. 202, the court sustained a demurrer to a count in an answer pleading as a defense that plaintiff's charter had expired prior to the date of the contract in suit. The court said: ''. . . we hold

that this count is bad in substance, because plaintiff's petition declares upon a written contract, entered into between the plaintiff and the defendant, by which the defendant solemnly admits the capacity of the plaintiff to enter into a binding obligation as a corporation. Having done this, the law will not now permit it, when sued upon a promise contained in such contract, to set up that the plaintiff had no corporate capacity to enforce the contract by suit. The defendant, under such circumstances, is estopped to deny plaintiff's corporate existence." The instant issue involves only the bond or contract and not the right of a corporation to sue or be sued. Bradley v. Reppell, supra, 1. c. 556, 648, and 691, respectively, recognizes the quotation from the St. Louis Gas Light Company case as good law. For the purposes of the issue, we have a "corporation by estoppel."

b. White v. Greenlee, 337 Mo. 514, 520[3], 85 S. W. (2d) 112, 116[4-6], covers "(b)," supra. In disallowing a preferred claim against the assets of a defunct county depositary on the contention the depositary bond was not binding on the bank, we said: "It is not shown in the record that the board of directors of the Eolia Bank authorized by resolution the execution of the bond, but absent such showing, right action will be presumed. [Citing authority.]"

The mere receipt of the School District's funds made the Citizens Bank of Senath liable and the bond imposed no additional obligation on the Bank. [Re Peoples Bank of Butler, 344 Mo. 611, 127 S. W. (2d) 669, 674[14].] We quote: "The next and last point is that, even if the bond otherwise would have been effective, it was not binding on the Auxvasse Bank in this instance, because the cashier, Stokes, had no authority to sign it for the bank. . . . Even though the bank was not bound, the respondent securities are nevertheless liable. As heretofore stated there was no positive illegality in the contract. The infirmities, if any, arise out of a lack of the necessary corporate authority or an improper exercise of it. In these circumstances the securities cannot claim exemption though the principal escape." Farmers & Trader's Bank v. Harrison, 321 Mo. 815, 824, 12 S. W. (2d) 755, 758[12], which case distinguishes the issues involved in Losee v. Crawford, 222 Mo. App. 683, 5 S. W. (2d) 105, and other cases relied on by the sureties here in that the bonds there involved were not completed instruments as they stood.

III. The sureties' last point is that there was no execution or delivery or acceptance of the bond. They refer us to certain provisions of Article 9 of Chapter 85, supra, stressing Section 12188. What we have heretofore said rules the contention against the sureties.

The foregoing disposes of all assignments of error. Mention is made *arguendo* that the Treasurer of a School District is required to give bond, citing Section 9335, Revised Statutes 1929 (Mo. Stat. Ann., p. 7175). If the School District had double security for this

money, it is a circumstance of no legal importance in the instant action.

.The judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.