BOARD OF REGENTS OF SOUTH-WEST MISSOURI STATE UNIVERSITY, Plaintiff–Appellant,

v.

George Daniel HARRIMAN, Defendant–Respondent,

Belinda Harriman, Intervenor.

No. 16727.

Missouri Court of Appeals, Southern District, Division Two.

June 7, 1990.

Motion for Rehearing or Transfer Denied June 22, 1990.

Lee Chestnut, Springfield, for plaintiff-appellant.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-respondent and intervenor.

SHRUM, Judge.

The Board of Regents of Southwest Missouri State University (hereinafter referred to as Board) appeals from an order setting aside a default judgment in favor of Southwest Missouri State University (hereinafter referred to as SMSU) against George Daniel Harriman (hereinafter referred to as respondent). The order appealed from also quashed an execution and garnishments in aid of execution issued in an effort to collect the default judgment.

SMSU filed a three-count petition against respondent in May 1985. Each count sought judgment against respondent on different student loan promissory notes alleged to have been signed by respondent. Copies of the notes attached to the petition show Southwest Missouri State University as payee. Respondent filed no responsive pleading. On July 31, 1985, default judgment on all counts was entered in favor of SMSU against respondent. The judgment in total (all three counts) was $11,159.05. In May 1988, SMSU requested garnishment in aid of execution be served on American National Insurance Company, as garnishee, by serving the law firm of Miller and Sanford of Springfield, Missouri. At the time, Miller and Sanford were acting as legal co-counsel for American National Insurance Company, the garnishee. An additional request was made by SMSU for service of garnishment on American National Insurance Company by directing service upon Lewis Crist, Director of the Division of Insurance for the State of Missouri. The legal file contains a third garnishment, issued at the request of SMSU, directed to American National Insurance Company and with instructions that it be served on the law firm of Ellis, King, Ellis and Black of Springfield, Missouri. That firm was also acting as legal co-counsel for the garnishee.

No sheriff's return or proof of service of the levy of execution, service of the notice to garnishee, or service of summons to garnishee is found in the legal file. The Miller law firm and the Ellis law firm filed garnishee interrogatory answers. The answers of the Miller and Sanford firm were as follows:

Law firm of Miller & Sanford, P.C., possess two settlement checks, each made payable to "Daniel Harriman, and his attorneys, Sherwood, Honecker & Bender". Check No. 10039837 from The Hartford is in the amount of $17,666.00. Check No. GX30250530 from CIGNA is in the amount of $8,834.00.

The Ellis law firm filed two sets of answers to the interrogatories. The pertinent part of the first set of interrogatory answers filed by the Ellis firm was as follows:

The law firm of Miller & Sanford, P.C., who is co-counsel for Defendants with the undersigned, possess two settlement checks, each made payable to "Daniel Harriman, and his attorneys, Sherwood, Honecker & Bender". Check No. 10039837 from The Hartford is in the amount of $17,666.00. Check No. GX30250530 from CIGNA is in the amount of $8,834.00. The undersigned has no property of the Defendant under his control or in his possession.

The pertinent part of the second set of interrogatory answers filed by the Ellis firm was as follows:

We have no property or money or effects of Defendant in our control or possession. However, the law firm of Miller & Sanford, P.C., which is co-counsel for Garnishee with the undersigned, possess two settlement checks, each made payable to "Daniel Harriman, and his attorneys, Sherwood, Honecker & Bender". Check No. 10039837 from The Hartford is in the amount of $17,666.00. Check No. GX30250530 from CIGNA is in the amount of $8,834.00. Said checks are issued as consideration for settlement of a lawsuit by Mr. Harriman against the Garnishee, but are not paid by the Garnishee and are not under its control.

The garnishee interrogatory answers were filed May 27 and June 7, 1988, respectively. On June 21, 1988, a motion was filed by respondent George Daniel Harriman and his wife Belinda Harriman seeking to inter-

vene in the garnishment proceeding on the basis that they had an interest in the funds as tenants by the entirety. The motion to intervene was sustained on July 7, 1988. Other post judgment motions were filed,[1] including Intervenors' (respondent George Harriman and his wife Belinda) Motion to Quash the Writs of Execution and Garnishment and to Set Aside Judgment and to Dismiss. The motion was based in part upon the assertion by intervenor that SMSU had no "standing" to sue at the time of the institution of the lawsuit and that only the Board of Regents of Southwest Missouri State University had "standing" to sue. Intervenor asserted that the lack of "standing" by SMSU left the trial court without jurisdiction to enter the default judgment. Intervenor's motion also asserted there was no proper service of summons and no proper notice of garnishment served upon American National Insurance Company. The trial court sustained intervenor's motion and set aside the default judgment as void[2] and quashed the execution and garnishments. It is from that order that this appeal is taken.

 The Board and SMSU acknowledge that SMSU is not a legal entity separate from its Board of Regents. The brief filed on behalf of SMSU[3] states:

The appellant agrees with the respondent that the underlying suit should have been brought in the name of the Board of Regents.

... There is no separate entity, by the legal name of "Southwest Missouri State University." The university itself had and has no legal capacity to sue or be sued as "Southwest Missouri State University".

Their position is correct and is grounded in the various provisions of Chapter 174, RSMo 1986,[4] which clearly evidences an intention and direction that the control and management of Southwest Missouri State University be vested in the Board of Regents not in SMSU itself as a separate legal entity. The courts of this state have long recognized that the quasi corporate entity in which the legislature has vested sole authority and responsibility for governing and managing state schools of higher learning are the Boards of Regents and Boards of Curators of the respective schools.

The several educational institutions ... are under the control and management of a Board of Curators or of a Board of Regents.... Mo.R.S.A. §§ 10753, 10760; *Head v. Curators of the University of Mo.,* 47 Mo. 220, 224.

*Board of Regents v. Palmer,* 356 Mo. 946, 951, 204 S.W.2d 291, 294 (1947). See also *Todd v. Curators of University of Missouri,* 347 Mo. 460, 465, 147 S.W.2d 1063, 1065 (1941); *State ex rel. Bd. of Regents v. Bonacker,* 765 S.W.2d 341, 348–49 (Mo. App.1989). Clearly, there is no separate legal entity known as Southwest Missouri State University. It is equally clear, however, that the real party in interest in this case, namely the Board of Regents of Southwest Missouri State University, was designated in this lawsuit by a name it has adopted and become known by (SMSU). The Board of Regents operate and conduct the business of a major university by a name commonly known as Southwest Missouri State University. The use of such "fictitious" name is expressly sanctioned by the legislature in § 174.020 and by § 174.030 the legislature authorized the Board of Regents to change that "ficti-

---

**1.** This court was furnished a legal file with a very limited portion of the post judgment motions as filed in the trial court.

**2.** Rule 74.06(b)(4) authorizes a court to relieve a party from a final judgment when the judgment is void upon motion upon such terms as are just. When relief is sought because of a claim that the judgment is void, the motion shall be made "within a reasonable time." Rule 74.-06(c).

**3.** In the caption of the Notice of Appeal, SMSU is denominated plaintiff. However, the party listed as appellant is "The Board of Regents of Southwest Missouri State University." That is the first instance in the entire record where the Board of Regents is mentioned.

**4.** All references to statutes and to rules are to RSMo 1986 and V.A.M.R., unless otherwise noted.

tious" name.[5] Where the real party is designated by a name it has adopted and become known by, no reason can be perceived for setting aside a judgment for lack of a legal plaintiff. *Bowen v. Buckner,* 171 Mo.App. 384, 387–88, 157 S.W. 829, 830 (1913). This is especially true in this case where respondent was doing business with SMSU. This court has held that:

> As between the parties, for purposes of litigation, there may be an estoppel to deny corporate existence. 18 C.J.S. Corporations § 108. It is a well-settled principle that where one contracts with a body assuming to act as a corporation *or by a name distinctly implying corporate existence,* both parties in a suit upon contract are usually estopped from denying corporate existence. (Emphasis added.)

*Berkel & Co. Contractors v. JEM Dev.,* 740 S.W.2d 683, 686 (Mo.App.1987). Also, see *Bader Automotive & Indus. Supply Co. v. Green,* 533 S.W.2d 695, 699 (Mo.App. 1976).

By not filing responsive pleadings, respondent admitted entering into a contract with SMSU. He admitted executing the notes made payable to SMSU. He also admitted there was consideration and that he accepted benefits under the contract. That is a tacit admission by respondent that a legal entity exists. There is no showing that the use of the name of SMSU in dealing with respondent affected the performance of SMSU or the performance of the Board of Regents, the real party in interest. SMSU did what it was obligated to do by the contract or note terms, i.e., loan money to respondent.

It is a well settled principle that "(w)here one contracts with a body assuming to act as a corporation or by a name distinctly implying a corporate existence, *both parties in a suit upon the contract are usually estopped from denying such corporate existence".* *White v. Bellafontaine Lodge, I.O.O.F.,* 30 Mo.App. 682, 684; *Bradley v. Reppell,* 133 Mo. 545, 32 S.W. 645, 647; *School Consolidated Dist. No. 10 of Arbyrd v. Wilson,* 345 Mo. 598, 135 S.W.2d 349, 354[12]; *Farmers' and Merchants' Ins. Co. v. Needles,* 52 Mo. 17, 19; 18 C.J.S. Corporations § 111(a). (Emphasis added.)

*Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971). Had respondent filed an answer or other responsive pleading and successfully raised, as a defense, lack of execution of the notes or lack of consideration, the Board of Regents would have been estopped to get another bite of the apple by claiming that SMSU was not a legal entity. Likewise, respondent is estopped, as a matter of law, from asserting the issue of lack of legal existence of SMSU. *Berkel & Co. Contractors, supra.*

There was a misnomer of the real party in interest. It is a fact that the party named as plaintiff in this action was misnamed.

In law, as well as in the ordinary usage of language, such an error or mistake is termed a "misnomer".

*Orona v. Consolidated Cab Company,* 373 S.W.2d 486, 488 (Mo.App.1963). It has been held by the courts of this state a mistake in the use of a name or misdesignation of a party (a misnomer) is waived if not raised by proper pleading, and hence a misnomer has been applied to misnamed plaintiffs as well as misnamed defendants. *Truck Ins. Exch. v. Bill Rodekopf Motors,* 623 S.W.2d 612, 614 (Mo.App.1981); *State ex rel. Mather v. Carnes,* 551 S.W.2d 272, 291 (Mo.App.1977). Respondent failed to raise the issue by any pleading that SMSU was a misnomer. The real party in interest is the Board of Regents of SMSU. However, the misnomer, SMSU, was descriptive of the real plaintiff. SMSU was the name which the Board of Regents was using to do business with the public, and SMSU was

---

**5.** § 174.020—"... the normal school at Springfield, Greene County, shall hereafter be known as the 'Southwest Missouri State College';...."

§ 174.030—"The board of regents of each state teachers college located in the districts described ... may in its discretion change the name of its college as provided by section 174.-020...."

the name with which the Board of Regents did business with the respondent. When respondent did not raise the misnomer issue, he waived that objection. There was a legal entity before the court, namely the Board of Regents of Southwest Missouri State University, doing business as SMSU. It was error for the court to declare the default judgment void because of an alleged lack of legal entity before the court.

■ Respondent's motion, filed with the trial court, claimed that plaintiff had "no standing to sue." [6] This court has recognized the footnoted definition as the essence of standing in *Crigler v. Frame*, 632 S.W.2d 94, 95–96 (Mo.App.1982):

The general rule is that to entitle any person to maintain an action, it must be shown that he has a justiciable interest in the subject matter of the action.... To warrant standing as a party, the prospective plaintiff must have some actual and justiciable interest susceptible of protection through litigation.... *"[T]he matter of standing does not relate to legal capacity to sue...."* (Emphasis added.)

Respondent's motion and brief does not elucidate the basis for his claim that SMSU lacked standing to sue. The court's order, finding the default judgment to be void, fails to state the legal basis for that finding. The trial court committed error if the basis of its order was that SMSU did not have standing because it was not a legal entity, and hence the court lacked jurisdiction to enter the judgment. As stated above, the Board of Regents, a legal entity, acting through a commonly known name, was before the court. Similarly, the trial court's order would be erroneous if based on a finding that there was a jurisdictional defect, and hence a lack of standing be-

cause an indispensable party was not before the court (see, for example, *Justus v. Webb*, 634 S.W.2d 567 (Mo.App.1982)). Although not properly named, and although a misnomer was used, the indispensable party, i.e., the Board of Regents, was before the court. Finally, no citation of authority is required to support the proposition that if the legal entity (the Board of Regents) was before the court (as has been held), that entity had sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of the controversy. The trial court erred in entering an order setting aside the default judgment as void.

■ The trial court's order also quashed the execution and garnishments. No specific reason was assigned by the trial court for the order quashing execution and garnishments. In reviewing the decision of a court-tried case, the primary concern of the appellate court is the correctness of the result that is reached. *Randel v. McClanahan*, 760 S.W.2d 607, 608 (Mo. App.1988). The judgment or order is to be affirmed if it properly could have been reached on any basis. *David v. Shippy*, 684 S.W.2d 586, 587 (Mo.App.1985). The legal file does contain intervenor's motion to quash the execution and garnishments. Respondent does aver in that motion that SMSU never effected a lien upon property of respondent because there was no proper service of summons and no proper notice of garnishment served upon garnishee American National Insurance Company. Despite that assertion in a motion before the trial court, SMSU did not include in the legal file any proof of service of the notice and summons on the garnishee. SMSU did not include in the legal file any proof of the levy of the execution. This court is entitled to assume that the omitted portions of

6. "Legal capacity to sue" should not be confused with "standing to sue." "Legal capacity to sue" is defined in Black's Law Dictionary 803 (5th ed. 1979) as the "right to come into court," and is a defense which can be waived if not raised by specific negative averment. Rule 55.13. "Standing to sue" means that a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Black's* at 1260. Standing is a concept utilized to determine if a party is sufficiently

affected so as to insure that a justiciable controversy is presented to the court. The requirement of "standing" is satisfied if it can be said that the plaintiff has a legally protectible and tangible interest at stake in the litigation. Lack of standing to sue cannot be waived and may be considered by the court sua sponte. *Brock v. City of St. Louis*, 724 S.W.2d 721, 725 (Mo.App. 1987); *Worlledge v. City of Greenwood*, 627 S.W.2d 328, 331 (Mo.App.1982).

the record were unfavorable to SMSU, and that is why they were not included. *Daniels v. Griffin*, 769 S.W.2d 199, 201 (Mo. App.1989); *Delf v. Cartwright*, 651 S.W.2d 622, 624 (Mo.App.1983).

 Garnishment proceedings are governed by Chapter 525 and Rule 90. Garnishment is purely a creature of statute in derogation of the common law. Strict compliance with all of the requirements imposed by statute and supplemented by Rule 90 are essential to support and confer jurisdiction in a garnishment proceeding. *State ex rel. Bagnell Inv. Co. v. Luten*, 647 S.W.2d 539, 541 (Mo. banc 1983); *Blanton v. United States Fidelity and Guar.*, 680 S.W.2d 206, 208 (Mo.App.1984); *Smith v. Bennett*, 472 S.W.2d 623, 628 (Mo.App. 1971). In this case there is no valid sheriff's return in the record before this court showing service of notice and summons to the garnishee. Supreme Court Rule 90.04 provides for service of notice and summons on the garnishee pursuant to Rule 54.13 and proof of service pursuant to Rule 54.-20. Compliance with that rule is not found in the record before this court.

It is well settled that the purpose of the notice of garnishment is the means by which the jurisdiction of the court is established over the debt.... The summons is to bring the garnishee personally into court, and he may, by appearing generally, waive any defect in the service of the summons as to him personally, but jurisdiction of the court over the res can neither be waived nor conferred by consent. Where the method of service of notice required by law has not been followed, the court does not acquire jurisdiction over the res. The trial court may proceed no further because mere jurisdiction over the person of the garnishee does not carry with it jurisdiction over the res. *Meyer v. Meyer*, 571 S.W.2d 477, 480 (Mo.App.1978); *C. Rallo Construction Co. v. Blong*, 313 S.W.2d 734, 737 (Mo.App.1958)....

In the present case, *failure of the court file to reflect either service of the notice or proof of service as provided by the rules is fatal to respondent's position. By filing an answer, the garnishee submitted itself to the jurisdiction of the court, but the court did not thereby acquire jurisdiction over the res.* (Emphasis added.)

*Feltner v. U.S. Army Finance and Accounting Center*, 643 S.W.2d 648, 649 (Mo. App.1982). A valid return showing notice to garnishee is essential to jurisdiction over the res; the summons and notice to garnishee are essential to provide jurisdiction of the court over the res. *State ex rel. Eagle Bank & Trust v. Corcoran*, 659 S.W.2d 775 (Mo. banc 1983); *State ex rel. Bagnell, supra; Blanton v. United States Fidelity and Guaranty Co., supra* at 208. It has long been the law in Missouri that to confer jurisdiction over the res in a garnishment proceeding, the sheriff's return must affirmatively show substantial compliance with essential requirements prescribed by the statutes and rules relating to garnishments in aid of execution. *Fulkerson v. Laird*, 421 S.W.2d 523 (Mo.App. 1967). No sheriff's return being found in the record before this court, the trial court was without jurisdiction over the res and its order quashing the garnishments was correct.

For the reasons stated above, the trial court's order setting aside the default judgment in favor of SMSU and against respondent is reversed. The case is remanded to the trial court with direction to reinstate the judgment. The portion of the trial court's order quashing the execution and garnishments is affirmed.

HOGAN, C.J., FLANIGAN, P.J., and MAUS, J., concur.